## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND CIGNA HEALTH AND LIFE INSURANCE COMPANY, | § § § § | |
| | § | JURY DEMANDED |
| Plaintiffs, | § § | |
| VS. | § | CIVIL ACTION NO. (.%!W!)+% |
| | § | |
| ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC; HOUSTON METRO ORTHO AND SPINE SURGERY CENTER LLC; and ELITE AMBULATORY SURGERY CENTERS LLC d/b/a ELITE SURGICAL AFFILIATES, | § § § § § § § § | |
| Defendants. | § | |

## CIGNA'S ORIGINAL COMPLAINT

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") file this Original Complaint ("Complaint") against Defendants Elite Center for Minimally Invasive Surgery LLC ("Elite"), Houston Metro Ortho and Spine Surgery Center LLC ("Houston Metro"), and Elite Ambulatory Surgery Centers LLC d/b/a Elite Surgical Affiliates ("Elite Affiliates") (collectively, the "Defendants") and allege as follows:

## I.
## INTRODUCTION

1.     This case is about fraudulent healthcare billing. Defendant Elite Affiliates owns and manages Elite and Houston Metro, two out-of-network ambulatory surgical centers operating in Houston area, both of which have been

victimizing the citizens of Texas and its employers, both public and private, through deceptive and fraudulent billing practices, namely a dual-pricing and gouging scheme. The scheme is designed to defraud Cigna and its members' health benefit plans out of millions of dollars in healthcare reimbursements by deceiving Cigna members about the cost of their out-of-network care and member cost-share obligations for medical services at Elite and Houston Metro; routinely waiving all or part of the members' cost-share obligations required under the terms of the members' health benefit plans (often by means of a sham "financial need" or "hardship" policy); and submitting false benefit claims to Cigna for charges that greatly exceed the estimated costs disclosed to the members before services were rendered and which do not disclose the waiver of patient cost-share obligations, thereby amounting to "phantom charges" and a misrepresentation of the true amount billed to Cigna members. Through this scheme, Defendants collectively, unlawfully, and unjustly obtained roughly $8 million in payments from Cigna to which they are not entitled, and they continue in their efforts to get more. Cigna now seeks to recover the overpayments and damages on behalf of itself and its plans, to establish that any Cigna denial of payment, in full or in part, or request for due proof of loss, is justified based on Defendants' fraudulent billing practices, and to enjoin Defendants' fraudulent scheme.

2.     Cigna is a Connecticut-based managed care company that administers healthcare benefit claim on behalf of self-funded and insured employee health and welfare benefit plans (including, but not limited to, plans insured by Cigna). In

general, these plans are funded by employers (including private companies, nonprofits, municipalities, school districts, and churches) using employee contributions, with Cigna providing administrative services, including claims administration, in a fiduciary capacity.   The benefit plans under which Cigna administers claims include coverage for healthcare services provided by both in-network providers and out-of-network providers.   Cigna assists employer sponsors of benefit plans in controlling healthcare costs by, in part, entering into network agreements with healthcare providers under which the providers agree to fixed rates for their services, which are typically lower than the providers might otherwise charge as an "out-of-network" provider (i.e., non-contracted provider).   In exchange for agreeing to fixed rates, participating providers (also known as "in-network providers") receive certain benefits, including access to Cigna pan members as a source of patients.   This concept is commonly referred to as "steerage."

3.      While Cigna members may obtain benefits for services provided by out-of-network providers, the benefit plans incentivize members to choose in-network providers through the form of lower coinsurance, deductibles, and copayments for in-network services.   Conversely, the plans require members to pay higher coinsurance, deductibles, and copayments when they choose to receive healthcare from out-of-network providers.   The increased cost-share obligations—including higher deductibles and coinsurance requirements—are intended to cause members to consider the overall costs of their medical care and to seek care at reasonable prices for available in-network providers who have agree to lower rates in exchange

for treating Cigna members. The benefit plans under which Cigna administers claims require the members to pay coinsurance typically between 20% and 50% of covered expenses for out-of-network care, up to a maximum out-of-pocket amount per plan year. Accordingly, not only is out-of-network care typically more expensive, but plan members choosing such care must pay a higher percentage of that greater cost, and bear the risk of being charged by the provider for any shortfall or balance between the amount covered by the plan and the amount charged. No economically rational Cigna member would choose to pay more for a service that can be performed at in-network facility available in the area.

4.    Some out-of-network providers have adopted a business model to circumvent these cost-control measures by submitting excessive bills to their patients' benefit plans, while waiving all or part of the patients' out-of-network cost-share obligations under the plans, so that the patients, in effect, incur a lower out-of-pocket expense for receiving care at an out-of-network provider even though the out-of-network provider charges the patients' benefit plan amounts that are well above market. This practice, commonly referred to as "fee forgiving," frustrates efforts by sponsors of benefit plans to control costs because it artificially incentivizes patients to select care from out-of-network providers, which often bill inflated charges for their services. Fee forgiving also undermines the ability of managed care companies, like Cigna, to offer robust networks of participating providers because the fee-forgiving practice thwarts the incentivizes of patients and plan members to seek care from available in-network providers. To discourage fee

forgiving, the plans under which Cigna administers benefit claims require providers to submit proof of loss of a covered service before Cigna will release any reimbursement for claims submitted.  The plans also expressly exclude coverage for healthcare expenses that a plan member is not personally obligated to pay.  In other words, only expenses that a Cigna member is obligated to pay are reimbursable.  If a Cigna member is not obligated to pay or billed for a charge, then any claim for reimbursement for any part of that charge is not covered under the terms of the plans.

5.     Elite and Houston Metro are two ambulatory surgical centers operating in the Houston area providing orthopedics, pain management, spine and pediatric ENT procedures.  Upon information and belief, both facilities are commonly owned and managed by Elite Affiliates.  Elite and Houston Metro are not contracted to participate in Cigna's provider network and are, therefore, out-of-network providers with respect to benefit plans under which Cigna administers claims.  Elite and Houston Metro implemented a scheme, which, upon information and belief, was developed by Elite Affiliates, that is designed to circumvent the cost-control measures utilized by the plans under which Cigna administers claims to unjustly enrich Defendants and its affiliated physicians to the detriment of Cigna and its members' health plans.  The scheme lures Cigna members to Elite and Houston Metro for medical services for which Elite and Houston Metro charge Cigna inflated and unjustified outpatient facility fees without charging plan

members their full out-of-network cost-share obligations, thereby inducing members to accept such unconstrained fees without deliberation.

6.      Defendants' fraudulent scheme operates as follows:

a.      Upon information and belief, Defendants offer physicians participating in Cigna's network a financial interest in the surgery centers and/or other remuneration to induce these physicians to perform outpatient procedures at Elite and Houston Metro as opposed to other available in-network facilities. By attracting participating providers from Cigna's network, Defendants are able to access Cigna's plan members as a source of patient volume without committing to Cigna's in-network facility-fee schedules;

b.      To entice Cigna's members to receive services at Elite and Houston Metro, Defendants mislead Cigna members about the actual cost of the facilities' charges and the members' out-of-network cost-share obligations and routinely waive all or part of the Cigna members' out-of-network cost-share obligations required under the members' plans. Defendants effectuate their fee-forgiving routine through use of a sham "financial need" or "hardship" policy and/or by promising Cigna members that they will not be required to pay any more than what they would pay at an in-network facility; and

c.      Defendants then submit reimbursement claims to Cigna for inflated charges that greatly exceed the cost of services disclosed to the members at the time of service and which fail to disclose that the members' out-of-network cost share has been waived in whole or in part, thereby misrepresenting the true amount of the facilities' overall charge for services billed to the member.

7.      As a result of this fraudulent scheme, Defendants have unjustly obtained approximately $8 million from Cigna, which rightfully belongs to Cigna and the benefit plans under which Cigna administers claims.

8.      Cigna brings this action on its own behalf, and in its capacity as the claims administrator and fiduciary of the benefit plans under which Cigna administers claims, to recover the millions of dollars it has improperly paid to

Defendants.  Cigna sues for, among other things, common law fraud, money had and received, unjust enrichment, and alternative equitable relief under the Employee Retirement Income Security Act ("ERISA"), for injuries it and its plans suffered as a result of Defendants' fraudulent billing scheme.  Cigna also seeks injunctive relief to prevent Defendants from continuing their fraudulent billing scheme as described herein.  By bringing this action, Cigna seeks to ensure that it and its clients (employer sponsor of benefit plans) and its customers (Cigna members) are charged appropriate amounts for services rendered and thereby to help maintain the affordability of healthcare coverage for individuals and employers.

## II.
## PARTIES

9.     Plaintiff Connecticut General Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the Bloomfield, Connecticut.

10.    Plaintiff Cigna Health and Life Insurance Company (together with Connecticut General Life Insurance Company, collectively "Cigna") is a company organized under the laws of Connecticut, with its principal place of business in Bloomfield, Connecticut.

11.    Defendant Elite Center for Minimally Invasive Surgery LLC is a Texas limited liability company that regularly conducts business in Houston, Harris County, Texas.  Elite may be severed with process through its registered agent Lori D. Ramirez at 2100 West Loop South, Suite 1200, Houston, Texas 77027.

-7-

12.     Defendant Houston Metro Ortho and Spine Surgery Center LLC is a Texas limited liability company that regularly conducts business in Houston, Harris County, Texas.  Elite may be severed with process through its registered agent Elite Ambulatory Surgery Centers, LLC at 2100 West Loop South, Suite 1200, Houston, Texas 77027.

13.     Defendant Elite Ambulatory Surgery Centers, LLC d/b/a Elite Surgical Affiliates is a Texas limited liability company that regularly conducts business in Houston, Harris County, Texas.  Elite Affiliates may be severed with process through its registered agent Lori Ramirez at 407 East Cowan, Houston, Texas 77007.

### III.
### JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over Defendants, which are Texas entities doing business in Texas.

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16.     In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws or treaties of the United States.  Specifically, Cigna assert claims in this case that arise, in part, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*  The Court has jurisdiction over Cigna's

-8-

remaining claims pursuant to 28 U.S.C. § 1367 because the state and common-law claims alleged herein form part of the same case or controversy as the federal claims.

17.    As claims fiduciary for its ERISA plans, Cigna has standing to sue under ERISA § 502(a)(3) to obtain appropriate equitable relief to redress violations of the ERISA plans and/or to enforce the terms of the ERISA plans.  Cigna has standing to sue on behalf of its non-ERISA plans because these plans, like all of the plans at issue, have expressly authorized Cigna to recover overpayments made on their behalf.  Cigna also has independent standing in its own right to recover overpayments and/or damages relating to payments made on behalf of its fully-insured plans, as payments on behalf of those plans are drawn from Cigna's own funds.  Finally, Cigna has standing because it has a concrete interest in ensuring that only valid claims are paid under the plans it administers and because it has suffered a concrete injury in that it has been forced to expend money and other resources to investigate and contain the harm caused by Defendants' fraudulent billing scheme.

18.    Venue is proper in the Southern District of Texas pursuant to 29 U.S.C. § 1132(e)(2) and § 1391(b)(1) because Defendants reside or may be found in this judicial district and pursuant to 29 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred here.

HOU:3645028.1

# IV.
## FACTUAL BACKGROUND

### A.  Cigna's Healthcare Benefits Plans

19.    Cigna is a global health service company dedicated to helping people improve their health, well-being, and sense of security by offering a broad integrated suite of health services and products to its members.

20.    Cigna's health services and products provide Cigna members with access to health coverage and benefits pursuant to a variety of healthcare benefit plans and policies of insurance, including (i) self-funded plans for which Cigna provides various third-party claims administrative services, (ii) plans insured under group policies issued by Cigna where plans are established and maintained by private employers, (iii) plans covering federal employees, (iv) plans covering employees of state governmental entities, (v) church plans, (vi) policies issued to individuals, and (vii) Medicare.

21.    In general, Cigna's plans allow members the choice of receiving healthcare services either *in-network*, from medical providers who contract with Cigna to provide services at reduced rates, or *out-of-network*, from providers who are not in Cigna's provider network.  Medical providers who enter into contracts with Cigna are commonly known as *participating providers*.  Cigna members have ready access to participating providers through a directory of participating providers that Cigna publishes to its members.  The contracts between Cigna and participating providers require the participating provider to accept in-network or contract rates for services as payment in full.  The Cigna member ordinarily has no

-10-

financial obligation to the participating provider beyond a small, fixed copayment or coinsurance, and the participating provider is contractually prohibited from billing the member for any other amounts (*i.e.*, *balance billing*), except under limited circumstances. Thus, members may obtain medical services from participating providers with little or no financial risk or out-of-pocket expense.

22. Cigna's plans also include coverage for some out-of-network services that *non-participating providers*, like Elite and Houston Metro, render to its members. Non-participating providers have not entered into contracts with Cigna, have not agreed to accept in-network rates as payment in full for their services, and the dollar amount of fees are not set in advance. Non-participating providers set their own fees for services rendered to their patients subject to the laws and regulations that govern the practice of medicine in Texas. The rates charged by non-participating providers are often significantly higher than contract rates. As a result, a member's financial out-of-pocket obligation for obtaining medical services from non-participating providers is often greater in the form of higher copayments, deductibles, co-insurance, and the balance bill responsibilities.

**B. Cigna's Discretionary Authority to Act on Behalf of the Plans**

23. Defendants' scheme has caused Cigna to overpay Defendants on hundreds of healthcare benefit claims, which Cigna administered on behalf of hundreds of health benefit plans.

24. Most of these benefit plans are Administrative Services Only ("ASO") plans that are employer sponsored and funded, typically through combined employer and employee contributions. Cigna serves as the claims administrator for

these plans and has discretionary authority over the payment of claims.   Upon information and belief, approximately seventy to eighty percent of the plans at issue in this lawsuit are ASO plans.

25.   The ASO plans delegate discretionary authority to Cigna to serve as the authorized claims-review fiduciary as follows:

> **Discretionary Authority**
>
> CIGNA is the fiduciary for Plan claims and appeals. The Plan Administrator delegates to CIGNA the discretionary authority to interpret and apply Plan terms and to make factual determinations in connection with its review of claims under the Plan. Such discretionary authority is intended to include, but not limited to, the determination of whether a person is entitled to benefits under the plan and the computation of any and all benefit payments. The Plan Administrator also delegates to CIGNA the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

26.   The plan sponsors or policy holders for the ASO plans involved in this case have entered into Administrative Services Only Agreements ("ASO Agreements") with Cigna, which delegate to Cigna "the authority, responsibility, and discretion" to, among other things, "make factual determinations and to interpret the provisions of the Plan to make coverage determinations on claims for Plan Benefits."

27.   Over the course of several years, Cigna has, upon information and belief, issued approximately $6.5 million in combined payments to Defendants on behalf of ASO plans.

28.     Cigna also offers fully-insured plans, which Cigna funds, not the sponsoring employers.     Upon information and belief, approximately twenty to thirty percent of the plans at issue in this case are fully-insured plans.

29.     The fully-insured plans delegate discretionary authority to Cigna to serve as the authorized claims-review fiduciary as follows:

**Discretionary Authority**

The Plan Administrator delegates to [Cigna] the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to [Cigna] the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

30.     Over the course of several years, Cigna has, upon information and belief, paid approximately $1.5 million of its own funds to Defendants on behalf of the fully-insured plans.

31.     The majority of Cigna's plans at issue in this case are governed by ERISA, in that they are non-governmental employee health and welfare benefit plans maintained by employers for the benefit of their employees and do not fall within any ERISA safe-harbor provision.

32.     In addition, a number of Cigna's plans at issue in this case are not governed by ERISA because they are sponsored by governmental or church employers.

33.     Regardless of the type of plan funding, and regardless of whether the plan is governed by ERISA, Cigna is a fiduciary in its role as claims administrator of each of the plans at issue in this case, in that each plan delegates to Cigna discretionary authority over plan assets and claims administration.   In this fiduciary capacity, Cigna has processed claims and/or addressed appeals on behalf of all of the plans at issue in this case, which are associated with the benefit claims on which Cigna seeks recovery.

34.     The plans at issue in this case also expressly authorize Cigna to collect overpayments made on the plans' behalf as follows: "When an overpayment has been made by CIGNA, CIGNA will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment."; "When an overpayment has been made by [Cigna], [Cigna] will have the right at any time to: (a) recover that overpayment from the person to whom or on whose behalf it was made; or (b) offset the amount of that overpayment from a future claim payment."; "When an overpayment has been made by Cigna, Cigna will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment."   Indeed, Cigna's ASO Agreements with ASO plans also require it to recover overpayments

made on the plans' behalf as follows: "In the event Connecticut General overpays a claim for Plan Benefits or pays Plan Benefits to the wrong party, it shall take all reasonable steps to recover the overpayment."

**C.   Cigna's Determination of Claims on Behalf of the Plans**

35.   The plans involved in this case reimburse Cigna members for certain healthcare costs, defined in the plans as *covered expenses*, which are expenses Cigna members *incur* for services that are covered under the plan and are medically necessary.  When a claim for reimbursement for a covered expense is submitted by a Cigna member, or by a provider or facility through an assignment of benefits, Cigna determines what part of the charge is considered for coverage by the plan.  This amount is known as the *allowed amount*, and the plans require the employer and the employee to share the cost of reimbursement for the allowed amount.

36.   The plans at issue in this case allow members the choice of receiving healthcare services either from in-network providers who contract with Cigna to provide services at fixed rates, or out-of-network providers who do not agree to fixed rates.  While in-network providers and facilities agree to provide services at agreed rates, out-of-network providers and facilities are not so constrained and typically charge far higher rates for their services than comparable in-network providers and facilities.  Thus, with respect to out-of-network claims, Cigna limits total payment on such claims to the *maximum reimbursable charge* (MRC) for covered expenses. The MRC is the lesser of (a) the provider's normal charge for a similar service (typically deemed to be the amount billed), or (b) a specified percentile of charges

-15-

made by providers of such services or a specified percentile of the reimbursement rate that Medicare provides for such services, in the same geographic area.

37.    The provider's billed amount is relevant and material to the determination of the allowed amount, which is the amount that Cigna determines to be covered by its plan, and which forms the basis for determining the plan member's cost share responsibility and Cigna's reimbursement payment. Because out-of-network, non-participating providers and facilities are not constrained by contracted rates, and typically charge far higher rates for their services than comparable in-network providers and facilities, out-of-network facilities like Elite and Houston Metro have an incentive to charge high amounts in the claims that they submit to Cigna, so that the amount Cigna pays on the claim will be correspondingly high.

**D.    Cigna Plan Provisions Designed to Make Healthcare Affordable**

38.    Cigna, its members, the healthcare benefit plans, and participating providers have a shared interest in keeping the cost of healthcare affordable and predictable.   To do so, Cigna's healthcare benefit plans encourage members to utilize in-network participating providers, an arrangement beneficial to both the participating providers, who enjoy steady patient traffic in exchange for agreeing to fixed rates for their services, and the patient/members who receive appropriate, high-quality health care services at a fair and reasonable cost.   The agreements between Cigna and its participating providers allow Cigna to deliver health care benefits efficiently through its provider network, to anticipate and control the cost of care, to reduce financial risk to both employer funded and fully insured plans, to

-16-

reduce its members' financial risk for health care services, and to promote the quality of care through its credentialing and peer review processes.

39.     Cigna's plan members also benefit from predictable healthcare costs. In particular, by seeking in-network healthcare services, Cigna's plan members are assured that they will only have to pay a fixed co-pay or percentage of a fixed amount and that providers and facilities will not be permitted to bill them for any difference between the plans' reimbursement and the providers' or facilities' billed charges. Cigna members also benefit from the increased quality of care brought about by Cigna's in-network credentialing and peer-review processes. Finally, Cigna members benefit from reduced overall healthcare costs in the form of lower employee contributions and/or premiums.

40.     Cigna's benefit plans utilize several measures to encourage plan members to seek care in-network, thereby reducing costs as described above.  Most significantly, Cigna's plans require members to pay a higher portion of what Cigna determines to be the allowed amount for out-of-network services through higher cost-share obligations, including co-payments, deductibles, and coinsurance. "Copayments" are flat dollar amount that members must pay for covered expenses. A "deductible" is an amount that must be paid by the member for Covered Expense each calendar year before the plan begins paying its percentage of Covered Expenses.  "Coinsurance" is a percentage of charges for Covered Expenses that a member must pay.

HOU:3645028.1

41.     Deductibles and coinsurance are critical factor to keeping the cost of healthcare affordable and is one of the key ways in which the plans allocate out-of-network costs between employers and employees.  The amounts that a member must pay for his or her deductible and coinsurance for out-of-network services are typically higher than the amounts that must be paid for in-network services.

42.     The plans at issue in this case require members to pay between 20% and 50% of the allowed amount for out-of-network services, after satisfying any applicable deductible, as compared to 10% or 20% of the charges billed by in-network, participating providers.  This difference is compounded by the fact that in-network providers already agree to charge reduced amounts for their services, while out-of-network providers have not agreed to charge reduced amounts and typically charge fees far higher than in-network rates.  In addition, to the extent that the amount charged by an out-of-network provider exceeds the allowed amount for the services provided, plan members are responsible for the difference.  In short, members that seek out-of-network healthcare services must pay a higher percentage of a greater charge and are at risk of having to pay the out-of-network providers the difference between that greater charge and the amount covered by the plan.

43.     The purpose of requiring members to bear a greater cost-share burden for out-of-network care is to sensitize members to the true costs of out-of-network services, ensuring that, if a members receive out-of-network services they are willing to pay a greater portion of that expense out of their own pocket.  If members

and patients did not share these costs, then they would have no financial incentive to moderate their demand for out-of-network services or to consider the higher costs of any particular out-of-network provider, leading to increased costs for the plan and ultimately plan members and healthcare consumers in general.  This purpose is in accord with public policy, as expressed by the Department of Health and Human Services, which has noted that "if patients are required to pay even a small portion of their care, they will be better health care consumers, and select items or services because they are medically needed rather than simply because they are free."[1]

44.     Eliminating a member or patients' cost-share obligations to pay more towards out-of-network services undermines Cigna's ability to offer quality in-network services.   If there is no financial difference to plan members between participating and non-participating providers, then they have no financial incentive to prefer participating providers in Cigna's network.  Without the stream of patients that this incentive is designed to produce, providers have less incentive to join Cigna's network, leaving the network less robust, and stripping the employers of the ability to offer affordable healthcare.

45.     Cigna's plans do not automatically cover or reimburse a member for every "charge" the provider submits to Cigna. Rather, for a benefit to be payable, the charge must be "Covered Expense," which satisfies all terms and condition of the plan, including that the expense is "incurred" by or for a covered person (*i.e.*, a plan member or the member's dependent), that the expense is medically necessary,

---

[1] Department of Health and Human Services, Office of the Inspector General, Special Fraud Alert: Routine Waiver of Copayments and Deductibles under Medicare Part B (May 1991).

and that it is included on the list of covered expenses appearing in the summary plan description and is not excluded from coverage.  Cigna's obligation to reimburse a plan member is therefore limited to the expenses actually incurred by the member.  If the member has no obligation to pay, then Cigna has no obligation to pay.

46.    These Covered Expenses are in turn subject to the applicable cost-share requirements of the plan, including deductible and coinsurance. Cigna plans typically define coinsurance as "the percentage of charges for Covered Expenses that you [the member] are required to pay."  Thus, Cigna's plans expressly require members to satisfy their cost-share responsibilities (including co-insurance and deductibles) in order for charges to be covered under the plans.  If a member is not charged anything in relation to the service provided, then she has not "incurred" any reimbursable expenses, and the  provider's charge is not a "Covered Expense."

47.    In addition, the plans at issue in this case contain specific exclusions and limitations, including the following:

      a.  "to the extent that payment is unlawful where the person resides when the expenses are incurred";

      b.  "charges which you [the member] are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan";

      c.  "charges which would not have been made if the person had no insurance";

      d.  "charges in excess of Maximum Reimbursable Charges."

48.     Particularly relevant in this case is the exclusion for "charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan." Under this exclusion, if a provider submits a charge of $10,000 to Cigna, but—(a) does not obligate the plan member to pay his portion of the charge submitted; (b) does not bill the patient for his portion of the charge; or (c) only bills the patient for the purpose of obtaining reimbursement from Cigna, and not for the purpose of actually collecting any portion of the charges from the patient—then the $10,000 is a "phantom" charge and the plan excludes coverage for the entire amount.

49.     The exclusion for "charges which would not have been made if the person had no insurance" is also relevant to this case. Under this exclusion, if the provider would not have charged a patient a particular amount if the patient were uninsured, then that amount is not covered by the plan. Accordingly, if a provider has a policy to waive payment when it determines a patient is unable to pay, and if the provider waives a patient's cost-share obligation purportedly pursuant to such policy—which itself would violate Cigna's plans—then the provider has necessarily demonstrated that it would not charge the patient the entire amount of its services were it not for the fact that the patient was insured. Thus, to the extent a provider waives any portion of a Cigna plan member's obligations under such a policy, there is no coverage for the amount billed to Cigna.

50.     As alleged above, Cigna's plans contain a provision allowing Cigna to recover any overpayment made by Cigna to providers or facilities. This recovery

-21-

provision creates an equitable lien by agreement over any payments made by Cigna. The provision puts plan members (and providers, as explained below) on notice that any overpayment made by Cigna will be recoverable (i.e., subject to the lien) as soon as the overpayment is made.

51.     The plan provisions discussed above apply equally to providers when a plan member assigns his or her benefit claim for reimbursement to the provider. The plans generally allow a member to assign his or her claim for reimbursement to a provider, with Cigna's consent. When a member assigns a claim to a provider, the provider stands in the shoes of the member, is eligible for reimbursement only to the extent the member would have been in the absence of an assignment. Moreover, the provider is on notice and subject to the plan provisions governing reimbursement including, the cost-share requirements, the plan exclusions, including exclusions for amounts that would not have been charged in the absence of insurance or that members are not obligated to pay, and the equitable lien by agreement on any overpayments.

52.     Providers receive actual and/or constructive notice of Cigna's plans provisions governing reimbursement through, among other things: (a) their relationships with Cigna's members; (b) review of members' insurance cards, which often provide co-pay requirements; (c) routine pre-procedure eligibility and benefits verification process, whereby Cigna customer-service representatives inform providers about a member's eligibility, an initial determination regarding whether a procedure requires pre-authorization under the plan, and the amount of the

members' unmet deductible, coinsurance requirements, and outstanding out-of-pocket maximum; (d) receipt of Provider Explanation of Benefits ("EOB") reports, which explain the basis of Cigna's payment or denials of claims; (e) correspondence with Cigna relating to the processing of claims; and (f) with respect to fully-insured plans, the relevant language of such plans are publicly available.

53.   Moreover, it is well established that out-of-network providers and facilities must charge patients their cost-share obligations. Indeed in some states, including Texas, this requirement is committed to law. *See* Section 1204.055(b) of the Texas Insurance Code, which provides that "[a] physician or other health care provider may not waive a deductible or copayment by the acceptance of assignment."

**E.   Defendants' Scheme To Defraud**

54.   Defendants have developed a business model designed to defraud managed care companies and insurers by charging grossly inflated phantom fees, which do not reflect the actual value that Defendants place on their services or the amounts billed to patients.

55.   Defendants' strategy, sometimes referred to as an *out-of-network strategy*, is implemented when non-contracted medical facilities, like Elite and Houston Metro, target and siphon off high-value patients whose health benefit plans and policies of insurance provide access to out-of-network benefits for services that non-participating providers, like Elite and Houston Metro, render to Cigna's members.   In furtherance of its out-of-network strategy, Defendants employed various underhanded schemes and practices to overbill Cigna and have Cigna

-23-

overpay Defendants for medical services provided to Cigna's members at Elite and Houston Metro.  This suit is Cigna's effort to obtain reimbursement for those overpayments and to establish that Cigna's denial of any payments is justified based on Defendants' fraudulent billing practices.

> **i.  Defendants induce physicians in Cigna's network to promote and refer patients to Elite and Houston Metro through lucrative investment opportunities**

56.   Defendants seek to maximize profits by drawing patients from Cigna's vast network of plan members and charging unconstrained out-of-network facility fees for the outpatient procedures performed on these patients at Elite and Houston Metro.

57.   Upon information and belief, Defendants accomplish this goal, in part, by marketing their facilities to area physicians participating in Cigna's network (*i.e.*, those who have steady access to Cigna plan members as a source of patients) and offering a significant amount of ownership in Elite, Houston Metro, and other facilities owned and managed by Elite Affiliate, in exchange for the in-network physicians' agreement to promote and refer patients to the Elite and Houston Metro.  In addition to significant ownership interest in its facilities—including Elite and Houston Metro—Elite Affiliates entices physicians with Cigna in-network contracts with promises of aggressive financial returns with an expected return on investment within a short period of time.

58.   Once Cigna's in-network physicians become financially incentivized, they begin promoting Elite Affiliate surgery centers and referring patients to Elite and Houston Metro, rather than other available in-network facilities in the area, at

-24-

which the physicians provide services.  Although the physicians themselves are bound by their in-network fee schedules for compensation of their professional fees, Elite and Houston Metro are not so constrained for their facility fees.  Therefore, Elite and Houston Metro charge unconstrained facility fees, and the referring in-network physicians share in the reimbursement windfall in the form of added profits and other forms of remuneration.

### ii.   *Defendants engage in fraudulent fee-forgiving to induce patients to accept expensive out-of-network care*

59.    In order to derive profits from unconstrained out-of-network facility fees, Defendants deceive Cigna plan members into accepting out-of-network care at Elite and Houston Metro by misleading them about the true costs of out-of-network care and by waiving members' out-of-network cost-share obligations, even though Defendants know or should know that members are obligated to pay these amounts in order to be entitled to benefits under the terms of their plans. This practice is known as "fee forgiving" and is forbidden under Texas law. *See* TEX. INS. CODE § 1204.055.

60.    The referring physicians, many of whom are, upon information and belief, participating providers in Cigna's network, refer Cigna plan members to Elite and Houston Metro for surgical procedures and often do not disclose in advance that these facilities are out-of-network facilities that will trigger the increased cost-share requirements of the members' plans, including requiring the patient to pay between 20% and 50% of covered charges as coinsurance.

61.     Through post-procedure patient surveys and patient interviews, Cigna has learned that a large number of procedures performed at both Elite and Houston Metro involve patients who were referred by their in-network physicians.  Most of the time, these in-network physicians refer patients to themselves, but perform the procedures out of network at Elite and Houston Metro, rather than at other available in-network facilities.   The out-of-network procedures result in unconstrained out-of-network facility fees, which would have been contained if the procedures had been performed in network.

62.     In the majority of cases of which Cigna is aware, Cigna's plan members were not aware that they were being referred to an out-of-network facility or that their physician had a financial incentive to refer patients to Elite and Houston Metro.  Indeed, far from informing plan members that obtaining healthcare at Elite and Houston Metro will trigger out-of-network cost-share obligations, Defendants intentionally mislead plan members into believing that they will not have to share in the cost of their care as required by their plans.

63.     Through post-procedure surveys and patient interviews, Cigna also has learned that both Elite and Houston Metro routinely waive patient cost-share obligations.  In response to surveys distributed by Cigna to plan members for whom Cigna had paid claims from Elite and Houston Metro, not one member responded that he or she had received a bill for the balance the facility's charges after Cigna's payment, as would be required if Elite and Houston Metro were collecting members' cost-share obligations.

-26-

64.     Many respondents further reported that they made no payment at all, while other respondents reported having made nominal payments that did not approach the actual amounts of coinsurance and deductibles that these members were required to pay under the plans (and that Elite and Houston Metro were required to charge if they wished to pursue reimbursement as assignees of the members' claims).  Many respondents also responded that they were told that Elite and Houston Metro would honor in-network rates or only charge what the member would otherwise be charged at an in-network facility.

65.     Cigna's investigation has also revealed that, in many instances, Defendants worked to conceal their fraudulent fee-forgiving scheme through the use of a "Financial Need" or "Hardship" policy.  Specifically, to encourage patients to use Elite and Houston Metro, Defendants have patients sign a Patient Statement form in which patients self-declare that they "could have financial need or hardship if required to pay the full amount of my deductible and/or coinsurance."  Notably, Elite and Houston Metro use the same Patient Statement with the same Elite Affiliate style company logo.

66.     The Patient Statement is a sham, which provides cover for routine and customary waivers of member cost-share obligations in order to remove the disincentive that plan members would otherwise have from choosing expensive out-of-network care, in violation of plan terms and state law.  The express terms of the Patient Statement allow Defendants to routinely waive cost-share obligations without determining in good faith that the member is in fact in financial need.  The

-27-

express terms of the Patient Statement also represent to the patients that Elite and Houston Metro have the authority to do so even though Cigna has informed Elite and Houston Metro repeatedly that it does not have such authority, and that this conduct violates Cigna's plan terms as well as Texas law.  Curiously, all of Elite and Houston Metro's patients apparently sign this form, and they do so on their date of service before they have received a bill.  In any case, Cigna's plans do not contain exceptions to member cost-share requirements for cases of financial need. Such an exception would be incongruous with the very nature of the cost-share provisions in Cigna's plans, which are intended to encourage members to choose more cost-effective care within Cigna's network, so as to reduce overall healthcare costs, to the benefit of plan members and consumers of healthcare generally.

67.     Tellingly, Defendants' out-of-network strategy only works if Elite and Houston Metro waive the patients' financial cost-share responsibility because very few, if any patients, could afford the Elite and Houston Metro's excessive and exorbitant prices. By fraudulently representing to potential patients implicitly or explicitly that Elite and Houston Metro have the authority to waive cost share responsibility under Cigna benefit plans, Defendants lure patients and Cigna members into their facilities.  Defendants then charge Cigna and its clients excessive and exorbitant prices that bear no rational relationship to the actual prices or market prices of the services provided.  By waiving the patients out-of-network cost-share as an inducement to choose Elite and Houston Metro over reputable,   in-network   facilities   or   less   expensive   out-of-network   facilities,

Defendants improperly reap substantial windfalls as the expense of Texas employers, both public and private. Cigna clients, which have limited resources and budgets, ultimately suffer because they unknowingly pay for fraudulent inflated healthcare bills that do not represent the true costs of the services rendered.

### iii.   Defendants' fraudulent fee-forgiving scheme renders their claims not covered under the terms of Cigna's plans

68.   Defendants' routine waiver of patient cost-share obligations renders the charges submitted to Cigna as expenses that are not covered.   Because Defendants routinely waive patient cost-share obligations, Cigna plan members do not in fact "incur" any expense associated with their care.   The charges submitted to Cigna are therefore not "Covered Expenses" for which Cigna is obligated to pay.   In addition, the charges submitted to Cigna are excluded from coverage because they encompass "charges which you [the member] are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan."

69.   To the extent Defendants applied their so-called Financial Need/Hardship policy in a given procedure, the resulting charges are non-covered and/or excluded because they are charges that "would not have been made if the person had no insurance."   Specifically, by waiving cost-share obligations because a patient purportedly cannot afford to pay them, Defendants necessarily determine that the members cannot afford the full cost of care.   Therefore, the charges that Defendants submit to Cigna would not have been billed to the member if the member did not have insurance at all.

70.     Based upon its investigation thus far, each of the claims that Defendants have submitted to Cigna are not covered because Defendants have deliberately failed to obligate Cigna members to pay such charges, including the members' full out-of-network cost-share amounts.  As a result, Cigna has made approximately $8 million in combined payments to Defendants, which were not, in fact, owed. Of that amount, and upon information and belief, Cigna paid approximately $1.5 million of its own funds on behalf of its fully-insured plans, and approximately $6.5 million on behalf of the self-funded employer plans under which Cigna administers claims.

### iv.     Defendants defraud Cigna and its plans by submitting phantom claims that do not account for fee-forgiving

71.     As described above, Elite and Houston Metro impermissibly waive member cost-share obligations when accepting assignments of benefits from plan members.   Defendants then submit grossly inflated claims to Cigna without disclosing their failure to satisfy the necessary conditions for reimbursement, namely, that the plan member incurs a cost and satisfies his or her cost-share obligations, and that the charge does not fall under any of the exclusions discussed above.

72.     Cigna has made specifically identifiable payments to Defendants based on the representations made in the claims submitted to Cigna for services provided at Elite and Houston Metro.  Upon information and belief, Cigna's payments were deposited into separate bank accounts that are in the names of each of Defendants and/or controlled by Defendants.

73.     The claims that Defendants submitted to Cigna for services provided at Elite and Houston Metro are fraudulent because they do not represent the actual charges for the services rendered.  Rather, the billed amount reflects a "phantom" charge, which Defendants never intend to collect from the patient, but submit to Cigna only because the patient has insurance.

74.     To take a simplified example, Defendants might submit a claim to Cigna for $10,000 for services provided to a Cigna plan member. Assuming that the entire amount is covered and allowed under the applicable plan, that the plan member's coinsurance for out-of-network services is 40%, and that the plan member has met her deductible, Cigna would pay 60% of the charge and the plan member would pay the remaining 40%, or $4,000.   However, if Defendants waive the member's coinsurance obligations, as they in fact routinely do, then they are really only billing the procedure at a value of $6,000, not $10,000.  The $10,000 charge to Cigna is in essence a "phantom" charge, which misrepresents the actual cost of the services provided, and the actual value that Defendants place on these services.

### v.     *Defendants defraud Cigna and its plans by submitting charges that are vastly inflated over the value that Defendants place on their services in fee disclosures provided to Cigna plan members*

75.     Beyond the fee-forgiving aspect of the scheme, Defendants' claims are also fraudulent because they are grossly inflated beyond the amount disclosed to plan members in advance.

76.     Upon information and belief, Defendants provide prospective patients with an estimated charge for the procedures to be performed.  After the procedures are performed, Defendants then bill Cigna for vastly greater amounts.   The

-31-

patient/plan member does not see this greater amount unless and until she examines her Explanation of Benefits from Cigna. This aspect of Defendants' fraudulent scheme is known as "dual pricing."

77.     Where dual-pricing of this nature has occurred, the amount billed to Cigna does not represent the true cost of the services provided.  The claims are therefore considered false claims, through which Defendants deliberately and materially misrepresent their actual charges with the intent to induce Cigna into relying on the misrepresentation and overpaying for the services provided.

78.     Based upon its investigation thus far, many of the claims that Defendants have submitted to Cigna have followed this pattern of "dual pricing." Like the fee-forgiving scheme, the dual-pricing scheme was developed at the corporate level by Elite Affiliates and has been implemented by its associated entities, including Elite and Houston Metro.

79.     Cigna has relied upon material misrepresentations and/or omissions in Defendants' claims in making approximately $8 million in payments to Defendants for services provided at Elite and Houston Metro to which none of Defendants are entitled. Of that amount, and upon information and belief, Cigna paid approximately $1.5 million of its own funds on behalf of its fully-insured plans, and approximately $6.5 million on behalf of the self-funded employer plans under which Cigna administers claims.

###### *vi.* *Defendants have attempted to conceal their fraudulent fee-forgiving scheme from Cigna*

80.    Cigna conducted an audit of Cigna members who received services at Elite and Houston Metro and on whose behalf Cigna reimbursed claims for benefits. Cigna's audit revealed that Elite and Houston Metro waived, in whole or in part, the members' out-of-network cost share obligation, in violation of the terms and conditions of Cigna's plan.   Cigna notified Elite and Houston Metro of Cigna's findings by letters dated March 3, 2014 and March 4, 2014, respectively.   Cigna could not have otherwise known of Defendants' furtive and fraudulent scheme prior to this time despite the exercise of reasonable diligence.

81.    Since that time, Cigna has engaged in correspondence with both facilities providing them with notice of Cigna's belief that they have violated the terms of Cigna's plans, seeking explanations from Defendants regarding their policies concerning cost-share billing and collection, and seeking documentation of the Elite and Houston Metro's efforts in this regard.   To date, Elite and Houston Metro have provided little if any documentation or other proof that the members' out-of-network cost-share amounts have been billed and/or collected or of how the facilities have calculated nominal cost-share amounts.   Thus, Cigna has notified Elite and Houston Metro that Cigna will no longer pay claims submitted by Elite or Houston Metro unless they are accompanied by appropriate "proof of loss"—that is, proof that the plan member has satisfied his or her out-of-network cost-share obligation and thereby incurred a loss.

HOU:3645028.1

82.     Nevertheless, Defendants continue to submit claims to Cigna without providing due proof of loss, and continue to refuse to provide such proof when requested by Cigna.  Without this proof as to how much Defendants obligated Cigna members, Cigna cannot process the claims consistent with the terms and conditions of the underlying plans.  Defendants' refusal to provide due proof of loss inhibits Cigna's ability to process Defendants' claims.  Accordingly, to the extent Cigna has denied payment of claims, in full or in part, for services provided at Elite and/or Houston Metro since approximately March 2014, Cigna's claims decision is justified, legally correct, and made in accordance with the terms of Cigna's plans.

### vii.   Defendants' fraudulent scheme violates Cigna's plans, Texas law, and public policy

83.     Defendants' billing practices violate the terms of Cigna's plans. Cigna's plans only cover expenses that qualify as "Covered Expenses," in that they satisfy all terms and conditions of the plans, including that the expense is "incurred" by the member or member's beneficiary, that the plans' cost-share requirements have been satisfied, and that the expense is not subject to the plans' exclusions, including exclusions for charges that the member is not obligated to pay and charges that would not have been charged if the member did not have insurance.

84.     Defendants know, or reasonably should know, of these terms through their interactions with Cigna plan members. When a plan member assigns his or her reimbursement claim to a provider, the provider steps into the shoes of the member and may not alter the terms of the plan vis-à-vis reimbursement and is

HOU:3645028.1

only eligible for reimbursement to the extent the member would be in the absence of an assignment.

85.     In addition, Defendants have reason to know of Cigna's plan terms through their review of member insurance cards, through the pre-procedure "eligibility and benefits" verification calls they routinely make to Cigna, through Provider Explanation of Benefit and Explanation that Cigna sends to Defendants when it denies or pays a claim, and through correspondence with Cigna relating to claims-processing.  Moreover, it is well known in the healthcare industry that out-of-network providers and facilities must charge patients their cost-share obligations.

86.     Accordingly, when Elite and Houston Metro accept an assignment of a plan member's claim without charging or collecting the member's cost-share obligation, they are not entitled to reimbursement for the claim, just as a plan member would not be entitled to reimbursement if she submitted the claim herself, having not satisfied her cost-share obligation.

87.     Courts have repeatedly held, in the context of fee-forgiving schemes similar to the one employed by Defendants here, that healthcare plans do not cover a provider's "charges" when that provider does not collect the patient's applicable cost-sharing responsibilities. *See, e.g.*, *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 701 (7th Cir. 1991); *Biomed Pharm., Inc. v. Oxford Health Plans (NY), Inc.*, 522 F. App'x 81, 81–82 (2d Cir. 2013).

88.     Defendants' fraudulent billing practices also violate state law concerning the billing practices of medical providers providing treatment and services in the State of Texas:

- **Section 1204.055 of the Texas Insurance Code**, which states that "[a] physician or other health care provider may not waive a deductible or copayment by the acceptance of assignment."  Upon information and belief, Defendants represent to patients that the services at their facilities will cost less or equal to the same services at an in-network facility.  Defendants' statements, however, are false because, to implement this strategy, Defendants  routinely waive the patients' cost-share responsibility in exchange for accepting the patients' assignment of benefits under which Defendants then bills Cigna inflated amounts that fail to reveal that the patients' cost-share has been waived. Defendants' waiver of patients' financial cost-share responsibility is a violation of Section 1204.055 and is a mechanism of committing fraud because Defendants never intent to collect from the patients' portion and fully intended for Cigna to base its reimbursements on grossly inflated charges which appear to be billed according to the plans.

- **Section 101.203 of the Texas Occupations Code**, which states: "[a] health care professional may not violate Section 311.0025, Health and Safety Code."  Section 311.0025(a) consists of the following prohibition: "A hospital, treatment facility, mental health facility, or health care professional may not submit to a patient or a third party payor a bill for a treatment that the hospital, facility, or professional knows was not provided or knows was improper, unreasonable, or medically or clinically unnecessary."  Defendants submitted charges for medical treatment that it knew were improper or unreasonable and violated section 101.203. Furthermore, Defendants treat patients pursuant to a set pattern of seeking patients based upon their financial viability and reimbursement potential, rather than any determination of patient need.

   **Section 105.002 of the Texas Occupations Code**, which states that a "health care provider commits unprofessional conduct if the provider . . . knowingly presents or causes to be presented a false or fraudulent claim for the payment of a loss under an insurance policy" or "knowingly prepares, makes, or subscribes to any writing, with intent to present or use the writing, or to allow it to be

-36-

presented or used, in support of a false or fraudulent claim under an insurance policy." Defendants submitted claims to Cigna seeking payment for services at fees far higher than the reasonable charges for the same services in the relevant market. Defendants also knew that the billed amounts were false charges because they never intended to collect the patients' financial cost-share of those billed amounts. Defendants knew that their requests for reimbursements included false and inflated charges for treatment and services that were not reasonable. Defendants also knew that their billing forms would be presented to Cigna in regard to claims for benefits under Cigna's plans.

- **Section 552.03 of the Texas Insurance Code**, which prohibits a healthcare provider from intentionally or knowingly charging two different prices for the same product or service, where "the higher price is based on the fact that an insurer will pay all or part of the price of the product or service." Defendants' scheme violates this provision because, upon information and belief, Defendants provide prospective patients with an estimated charge for the procedures to be performed, or estimate the patients' cost-share amount based upon a lower estimated charge for the procedure, but then bill Cigna for vastly greater and wholly different amounts with the expectation that Cigna will issue reimbursement based on the higher amount.

- **Section 102.001 of the Texas Occupation Code**, which states: "[a] person commits an offense if the person knowingly offers to pay or agrees to accept . . . any remuneration . . . to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency." Upon information and belief, Elite and Houston Metro entered into agreements with physicians or practice groups pursuant to which Elite and Houston Metro offered to pay and did pay remuneration in the form of financial ownership interests or other financial incentives in exchange for the physicians or practice groups bringing patients into and performing surgeries at Elite and Houston Metro. Elite and Houston Metro's remuneration for referral arrangements are part of their scheme to defraud Cigna because the facilities gain the benefits of increased traffic from patients who have health benefit plans by paying in-network doctors to perform surgery at their facilities. Such remuneration for referral arrangements, however, violate Texas law prohibiting any payments for the referral of patients.

-37-

- **Section 102.006 of the Texas Occupation Code**, which states: "[a] person commits an offense if . . . the person . . . accepts remuneration to secure or solicit a patient or patronage for a person licensed, certified, or registered by a state health care regulatory agency; and . . . does not, at the time of initial contact and at the time of referral, disclose to the patient . . . that the person will receive . . remuneration for securing or soliciting the patient." Defendants did not disclose their remuneration for referral arrangements to Cigna or Cigna's members before the medical services were provided, thereby violating Section 102.006, even assuming that the remuneration for referral arrangements were lawful.

89.     Elite and Houston Metro each promise their patients in their "Patient Bill of Rights and Responsibilities" that they have the right "[t]o be informed about and participate in decisions regarding your care including the refusal of treatment" and the right "[t]o information about the financial aspects of services and alternative choices."  Elite and Houston Metro admit in their Patient Statement forms that they "may be required to abide by state and federal healthcare laws and/or insurance companies policies that limit the practice's ability to make such discounts and this will be evaluated on a case by case basis."  Yet despite the fact that Texas state law prohibits Elite and Houston Metro from waiving Cigna members' cost share obligations, and even though Cigna has informed Elite and Houston Metro that Cigna's benefit plans exclude coverage where cost share obligations have been waived, Elite and Houston Metro withhold this material information from Cigna customers.  By doing so, Elite and Houston Metro materially mislead Cigna customers into believing that Defendants' business practices are somehow permissible and places the members' coverage in jeopardy.

-38-

90.     Defendants' fraudulent billing practices similarly violate public policy as expressed, inter alia, in a Special Fraud Alert issued by the Office of Inspector General for the Department of Health and Human Services, which states (in the context of Medicare payments) that, "[r]outine waiver of deductibles and copayments by charge-based providers, practitioners or suppliers is unlawful because it results in . . . false claims . . . [and] excessive utilization of items and services paid for by Medicare." HHS OIG Special Fraud Alerts (Dec. 19, 1994) (available at https://oig.hhs.gov/fraud/docs/alertsandbulletins/121994.html).

91.     Moreover, Defendants' fraudulent billing practices renders any assignments of benefits that Elite and Houston Metro may have taken from Cigna members void for illegality.  Defendants never disclosed to Cigna that they paid financial incentives to referring physicians in exchange for the solicitation of patients or that they routinely waived the members' financial cost-share responsibility as required under the Cigna plans.  Both types of remuneration are illegal, violate public policy, and render void Elite's and Houston Metro's assignments of the members' rights to medical benefits under their plans.  Thus, Defendants are not entitled to be paid where they obtain patients through illegal or improper means.

## V.
## CAUSES OF ACTION

### A.   Common Law Fraud

92.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

HOU:3645028.1

93.    Defendants are liable to Cigna for common law fraud.  Defendants submitting, or caused to be submitted, false and misleading bills containing inflated, "phantom" charges that did not reflect the actual value of the services provided or the amount that Defendants would have charged to its patients if they had not been Cigna plan members.

94.    Defendants had an independent duty under state and common law, beyond any obligation under the plans, to submit honest and accurate claims to Cigna regarding the value of the services provided to Cigna plan members.

95.    At the time Defendants submitted claims to Cigna for reimbursement, they knew that the representations made in the claim forms were false and misleading or that such representations were made without regard to their truth or falsity because they contained charges well in excess of the amounts quoted to Cigna's plan members in advance of the procedure, well in excess of the amounts Defendants used to determine the patients cost-share amounts, and/or well in excess of the amount at which Defendants, themselves, valued the services provided.

96.    As alleged herein, Defendants' claims are fraudulent because (i) they contain charges that do not reflect that Defendants routinely waived patient cost-share obligations, showing that Defendants actually value the services between approximately 20% and 50% less than the amount charged to Cigna; and (ii) they contain charges grossly in excess of the amounts quoted to patients in advance of the procedures or the amounts Defendants used to calculate the patients' cost-

share, showing that the value of Defendants' services is markedly less than the amount billed to Cigna.

97.     The misrepresentations and omissions contained in the claims submitted by Defendants were made  intentionally, as part of a broader policy conceived by Elite Surgical Affiliates and implemented by Elite and Houston Metro to deceive Cigna into making payments for facility fees well in excess of the true value of the claims and of the amounts quoted to Cigna plan members in advance. By submitting such claims, Defendants calculated that by reason of the circumstances of their submission and for other reasons, Cigna would not discover at least some of them, thereby resulting in a windfall to Defendants.

98.     Defendants' intent to defraud is shown, *inter alia*, by their use of a sham "Financial Need/Hardship" policy to provide "cover" for the routine waiver of cost-share obligations and by their continued refusal to provide proof of loss or an explanation of their billing practices.  The policy is a sham and the underlying facts to support any alleged hardships do not exist with respect to the claims at issue.

99.     The intentional misrepresentations and omissions in Defendants' claims were material, in that Cigna must rely on claim forms submitted by providers in order to determine what it is obligated to pay a provider on behalf of its plans. This is true even though Cigna's plans contain provisions defining "Maximum Reimbursable Charges" for out-of-network claims because the Maximum Reimbursable Charge is itself determined with reference to the amount charged by Defendants.

-41-

100.    Cigna reasonably relied on the material false statements and omissions contained in Defendants' claims and, as a result, issued combined payments of approximately $8 million in claims to Elite and Houston Metro to which Defendants are not entitled.   Of that amount, and upon information and belief, Cigna paid approximately $1.5 million of its own funds on behalf of its fully-insured plans, and approximately $6.5 million on behalf of the self-funded employer plans under which Cigna administers claims. The misrepresentations, and Cigna's reliance on them, were the direct and proximate cause of damages to Cigna.

101.    Moreover, when Cigna learned of Defendants' fraudulent fee-forgiving and dual-pricing schemes, Defendants continued to actively conceal the nature of their billing practices by refusing to respond fully to Cigna's repeated requests for documentation and falsely insisting that they were not engaged in a fraudulent billing scheme.

102.    Each Defendant was individually engaged in this scheme to defraud Cigna and its plans. Defendants, individually and collectively, induced participating providers in Cigna's network to refer their patients (Cigna's plan members) to their out-of-network facilities. Defendants then induced Cigna plan members to receive services out of network by misrepresenting members' cost-share obligations. After wrongfully and illegally waiving member cost-share obligations, Defendants submitted, or caused to be submitted, claims to Cigna seeking reimbursement.

103.    As a result of Defendants' fraudulent conduct, Cigna and its plans have suffered significant damages, in an amount to be determined at trial.

-42-

**B.    Money Had and Received**

104.    Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

105.    In addition or in the alternative, Defendants are liable for money had and received.  Defendants are entitled to no more than a reasonable fee for the services provided and no more than the maximum reimbursable charge under the plan for covered expenses that are actually incurred by the Cigna member.

106.    Defendants wrongfully submitted false and misleading claims for benefits that (i) contained charges that did not reflect that Defendants had waived patient cost-share obligations; and (ii) contained charges grossly in excess of the amounts quoted to patients in advance of the procedures or the amounts Defendants used to calculate the patients' cost-share, showing that the value of Defendants' services is markedly less than the amount billed to Cigna.  By engaging in a dual-pricing scheme and charging Cigna excessive fees without also charging Cigna's members their proportionate cost share, Defendants have gouged Cigna and its plans.

107.    Defendants are not entitled to payments for expenses that the Cigna plans do not cover.  While Cigna's plans are required to cover some portion of the actual charges and expenses for services that plan members incur from out-of-network providers like the Elite and Houston Metro, the plans are not required to cover expenses for which the members are not billed, are not obligated to pay, or would not have been billed if they did not have insurance.  As alleged herein, Elite and Houston Metro routinely waived the patients' cost-share responsibility under

-43-

the plans and in turn billed Cigna as if no such waiver had occurred.  Based on these bills, Cigna processed and paid benefits for services as though they were covered under the plans, when in fact they were not.  Accordingly, any payments for services that the Cigna plans did not cover should, in equity and good conscience, be returned to Cigna.

108.   As a result of Defendants' wrongful conduct, Cigna and its plans have suffered significant damages, in an amount to be determined at trial.

## C.   Negligent Misrepresentation

109.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

110.   In addition, or in the alternative, Defendants are liable for negligent misrepresentation.   Defendants made material misrepresentations when it (1) submitted false and misleading bills for reimbursement of charges that were substantially in excess of the usual, customary, and reasonable charges for the same or similar medical services in the relevant market, and contained amounts that the  improperly split with its referring physicians, and (2) submitted claims to Cigna for facility charges that were in excess of the amounts that the patients actually agreed to pay.  These misrepresentations were made in the course of the Defendant's businesses in which they had a pecuniary interest.   Defendants supplied false information for the guidance of Cigna in its business.  Defendants failed to exercise reasonable care or competence in communicating this information.  As a direct and proximate result of these negligent misrepresentations, Cigna has suffered damages.

-44-

111.   As a result of Defendants' wrongful conduct, Cigna and its plans have suffered significant damages, in an amount to be determined at trial.

**D.   Promissory Estoppel**

112.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

113.   In addition, or in the alternative, Defendants are liable for promissory estoppel.  When Defendants submit claims for reimbursement of assigned medical benefits, they make numerous representations to Cigna, including, but not limited to (1) that the claims reflect medical services that were actually provided by Elite and/or Houston Metro; (2) that the claims reflect charges that are usual, customary, and reasonable for the same or similar medical services; and (3) that the claims reflect the actual charges for which the member has been obligated to pay. Defendants further certify on each claim submission that the information contained in the claim is "true, accurate, and complete."

114.   Cigna reasonably and substantially relied on these representations to its detriment, as it paid Defendants' claims in reliance on Defendants' representations.  Cigna's reliance was foreseeable by Defendants, as Defendants could reasonably have expected Cigna to act based on the representations in Defendants' bills submitted to Cigna.

115.   As a result of Cigna's reliance on Defendants' representations, Cigna and its plans have suffered significant monetary damages, in an amount to be determined at trial.

### E.    Unjust Enrichment

116.    Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

117.    In addition, or in the alternative, Defendants are liable under the principle of unjust enrichment.  Under Texas law, one may recover based on unjust enrichment if another party has used fraud, duress, or taking undue advantage to obtain a benefit.

118.    Cigna's plans are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like Elite and Houston Metro.  Cigna's plans are not required to cover amounts that members are not billed, are not obligated to pay, or for which they would not have been billed if they did not have insurance.  The plans also are not required to cover a portion of any phantom charge that do not in fact represent the amount the provider seeks to collect.

119.    Defendants submitted, or caused to be submitted, bills to Cigna falsely stating charges for amounts that were higher than the actual amounts that Elite and Houston Metro required Cigna's plan members to pay for those services.  Based on these bills, and the falsely stated charges therein, Cigna processed benefits for services and paid these benefits directly to Elite and Houston Metro.

120.    When Cigna paid benefits to Elite and Houston Metro that the plans were not obligated to cover, Defendants obtained a benefit from Cigna through its fraudulent billing practices.  As a result, Defendants have been unjustly enriched and Cigna and its plans have been injured.

-46-

121.   It would be inequitable for Defendants to retain the amounts Cigna paid as a result of Defendants' wrongful conduct as alleged herein.

122.   Each of Cigna's plans authorize Cigna to recover overpayments made by Cigna on the plan's behalf.  The recovery terms in the plans put plan members and, through assignment, Defendants, on notice that any overpayments made by Cigna rightfully belong to Cigna and its plans by virtue of an equable lien by agreement.

123.   Cigna does not have an adequate remedy at law to recover the entire amount of overpayments made to Defendants.

**F.   Tortious Interference with Contract**

124.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

125.   In addition, or in the alternative, Defendants are liable for tortious interference with the Cigna plans at issue in this case.

126.   At all times at issue in this Complaint, Cigna insured and/or administered valid, contractually binding policies of insurance and/or employee health and welfare benefit plans with its members.  Each of these contracts (the plans) contained, among other terms, provisions that required plan members to pay their cost-share obligations (including co-insurance and deductibles) in order for the plan to cover a portion of the submitted charge for the services rendered.

127.   Defendants knew or had reason to know that their patients (Cigna members) were parties to valid contracts with Cigna and the plans.  Defendants further knew or had reason to know that their patients (Cigna members) were

-47-

contractually obligated by their plans to satisfy their cost-share obligations before the plan would release reimbursement for covered charges.

128.   Defendants, however, took numerous over steps as alleged herein that were aimed at avoiding the patient cost-share obligations for out-of-network benefits, including, but not limited to, routinely waiving such obligations and designing and implementing a "financial need" and/or "hardship" policy to be sued as a means of waving patient cost-share requirements for Cigna members.

129.   Defendants willfully and intentionally interfered with Cigna's plans by inducing Cigna members to breach the terms of their plans, by failing adequately to inform Cigna members that Elite and Houston Metro were out-of-network facilities, misleading them about their healthcare benefits and cost-share obligations, assuring them that Defendants would not bill them, falsely suggesting that they would be relieved of their cost-share obligations if they signed a sham Patient Statement reflecting "financial need" or "hardship," assuring them that they would not incur unexpected charges, and/or routinely waiving their cost-share obligations before submitting assigned claims for reimbursement to Cigna.

130.   Defendants' interference with Cigna's contractual relations with plan members is wrongful and has been—and continues to be—done without any right or privilege to do so.

131.   Defendants' tortious interference caused Cigna to pay approximately $8 million in combined payments to Elite and Houston Metro, to which Defendants were not entitled.  Of that amount, and upon information and belief, Cigna paid

approximately $1.5 million of its own funds on behalf of its fully-insured plans, and approximately $6.5 million on behalf of the self-funded employer plans under which Cigna administers claims.

132.   As a result of Defendants' tortious interference, Cigna and its plans have suffered significant damages, in an amount to be determined at trial.

## G.   Injunctive Relief

133.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

134.   Defendants are engaging in billing practices that violate Texas statutory laws and other applicable standards of conduct concerning the billing practices of medical providers and the disclosure of material information to patients.

135.   Cigna seeks injunctive relief that Defendants cease and desist these unlawful practices.  Specifically, Cigna requests that Defendants be enjoined from (1) submitting benefit claims to Cigna that exceed the usual, customary, and reasonable fees for similar services provided at hospitals in the Houston market, (2) waiving, reassuring or making other promises to induce Cigna members to use their facilities, including reassurances that they will not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility, and (4) paying remuneration of any kind to physicians or physician practice groups for their referral of patients to Elite and/or Houston Metro for medical treatment.

136.   Cigna also requests that the Court require Defendants to fully notify and apprise all patients, including Cigna's members, when their referring physicians have an ownership interest in Elite and/or Houston Metro or other ownership interest granted as a result of, and in exchange for, referring patients to Elite and Houston Metro.

137.   A permanent injunction is proper because there will be immediate and irreparable  harm if Defendants continue to submit fraudulent claims while waiving the patients' financial cost-share obligations, and Cigna has no other adequate remedy at law.  A greater injury will result from denying the injunction than from its being granted, and the injunction will not disserve the public interest.

## H.   Declaratory Judgment

138.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

139.   An actual, justifiable controversy exists between Cigna and Defendants concerning the improper billing practices of Defendants described herein, including their violations of Texas statutory laws regarding same.  Pursuant to 28 U.S.C. § 2201 and Chapter 37 of the Texas Civil Practice and Remedies Code, Cigna seeks a declaratory judgment that (1)  Defendants have violated Texas statutory laws concerning the billing of medical treatment and services provided to Cigna members, (2)  Defendants did not disclose waivers, reassurances, or other promises made to induce patients to use its facility, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility, (3) Defendants have violated

-50-

Texas statutory laws concerning remuneration for patient referrals and they did not disclose to Cigna that they entered into remuneration for referral arrangements with physicians for their referral of patients to Elite and Houston Metro for surgery, (4) Cigna is entitled to recoup all overpayments paid to Defendants on the excessive and fraudulent charges made on benefit claims submitted to Cigna; and (5) to the extent Cigna has not paid, in full or in part, claims from Defendants for services provided at Elite and/or Houston Metro since approximately March 2014, Cigna's claims decision is made in accordance with the terms of Cigna's plans and justified based on Defendants' acts as alleged herein.

## I.      Equitable Relief Under ERISA § 502(a)(3) (ERISA plans)

140.    Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

141.    Cigna contends its state law claims may be pursued because they do not relate to ERISA and are not preempted and because some of the plans in question are non-ERISA plans.  In addition, or in the alternative, to the extent this dispute involves the exercise of Cigna's discretion under an ERISA plan, under the terms of ERISA, Cigna is entitled to equitable relief under ERISA § 502(a)(3).

142.    The vast majority of Cigna's plans are governed by ERISA, in that they are nongovernmental employee health and welfare benefit plans maintained by employers for the benefit of their respective employees, and do not fall within any ERISA safe-harbor provisions.

143.    Cigna has been delegated by the Plan Administrator for each of the ERISA plans at issue in this case the discretionary authority to review and make

claims decisions for benefits under the ERISA plans. Cigna has discretionary authority over the management of the ERISA plans, management of the assets of the ERISA plans, and/or the administration of claims submitted pursuant to the ERISA plans. As claims administrator, Cigna is a fiduciary with standing to sue under ERISA § 502(a)(3) to obtain appropriate equitable relief to redress violations of Cigna's ERISA plans terms and/or to enforce Cigna's ERISA plans terms.

144. The terms of the Cigna plans at issue provide coverage only for expenses actually incurred by plan members, require plan members to satisfy cost-share obligations for out-of-network care, and specifically exclude from coverage charges that plan members are not obligated to pay, or for which members are not billed, or for which members would not have been billed except that they had insurance.

145. Defendants deliberately and routinely decline to charge Cigna plan members the full amount of their cost-share obligations for out-of-network care, in violation of plan terms. Defendants also routinely promise plan members that they will not seek to collect their plan cost-share obligations, through a sham "Financial Need/Hardship" policy.

146. When Defendants obtain assignments of benefits from Cigna plan members and thereafter submit claims for reimbursement to Cigna, Defendants stand in the shoes of the plan members *vis-a-vis* the terms governing reimbursement and cannot unilaterally alter those terms.

147.   The claims Defendants submit are not true, accurate, and complete as required by law and contain charges that are not covered under the relevant plans, because they do not qualify as "Covered Expenses" actually "incurred" by plan members, do not satisfy the plans' cost-share requirements, and are exclude by the plans' provision excluding charges that plan members are not obligated to pay and would not have been charged if they did not have insurance.

148.   In reliance on the representations in these claims, Cigna has made payments to Defendants on behalf of its plans for charges that are not in fact covered.   By paying claims that were in fact excluded from coverage, Cigna has overpaid Defendants on behalf of the plans.

149.   An actual controversy exists between Cigna and Defendants regarding whether these claims for reimbursement are covered and payable under the plans.

150.   The amount of the overpayments includes the difference between the benefits that the plans paid and the benefits to which the plan members were contractually entitled.   The amount of the overpayments may be based on the amount that Defendants actually required the members to pay.   Alternatively, the amount of the overpayments may be based on the difference between the benefits that the plans paid and the median in-network contract rate, which approximates the amount the plans would have paid if the patients had been treated at area in-network facilities.   In no case should the plans have paid more than the maximum reasonable charge.

151. Cigna made these specifically identifiable overpayments directly to Defendants, and, upon information and belief, such payments were deposited into a single account in each of Defendants' name and/or controlled by Defendants. Cigna has no reason to believe that Defendants have dissipated the overpayments on nontraceable items. Thus, on information and belief, Defendants are currently in possession and control of specifically identifiable overpayment funds that in good conscience belong to the ERISA plans at issue in this case.

152. Cigna's ERISA plans contain provisions authorizing Cigna to recover overpayments that Cigna made on behalf of the plans. Pursuant to these terms, plan members and the providers to whom the members assign reimbursement claims are on notice that any overpayments Cigna makes are subject to an equitable lien by agreement and rightfully belong to Cigna and/or the plans.

153. In addition, Cigna's ASO Agreements with its ASO plans authorize and require it to recover overpayments in the event Cigna overpays a claim for benefits.

154. Cigna seeks to enforce these terms by recovering from Defendants all overpayments as alleged herein. Because the overpayments are subject to an equitable lien by agreement and assignment, Cigna is entitled to recover the overpayments made to Defendants.

155. Specifically, and without limitation, Cigna seeks the following: (i) a constructive trust over the monies currently held by Defendants as a result of Cigna's overpayments as alleged herein; (ii) an order preliminarily and permanently

HOU:3645028.1

enjoining Defendants from dissipating or transferring any of their funds that would bring their bank accounts below the amount of Cigna's overpayments; (iii) an order requiring the return of such funds and an accounting of any portion of the funds no longer in Defendants' possession or control; (iv) a declaration that under the terms of the ERISA plans at issue, no coverage is due where Defendants do not enforce the plans' cost-share requirements or where Defendants charge for expenses that would not have been charged to the member if the member did not have insurance; (v) a declaration that Cigna may offset the amount of these overpayments from future payments to Defendants; (vi) a declaration that, to the extent Cigna has not paid, in full or in part, claims from Defendants for services provided at Elite and/or Houston Metro since approximately March 2014, Cigna's claims decision is made in accordance with the terms of Cigna's plans and justified based on Defendants' acts as alleged herein; and (vii) a permanent injunction directing Defendants to submit claims containing charges that Defendants actually charge the plan member as payment in full and not to submit charges which include amounts that Defendants do not actually require the member to pay or would not have charged if the member did not have insurance; and (vii) other appropriate equitable relief.

## J.     Civil Conspiracy

156.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

157.   In addition, or in the alternative, Defendants are liable for civil conspiracy. Defendants conspired with one another to commit the overt acts alleged herein, which Defendants committed with the intent to harm Cigna and its plans.

As a consequence, Defendants' wrongful conduct has proximately caused inequitable harm and damage to Cigna and its plans.

158.   In as much as Defendants collaborated with one another in such a conspiracy, they are each liable for the others' acts.   Thus, Cigna is entitled to appropriate equitable relief and to collect both actual and exemplary damages from Defendants jointly and severally.

## VI.
## DISCOVERY RULE

159.   Cigna pleads the discovery rule and asserts that it could not have known, despite the exercise of reasonable diligence, all of the facts giving rise to its claims alleged herein prior to the institution of this lawsuit.

## VII.
## EXEMPLARY DAMAGES

160.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

161.   Defendants' conduct was fraudulent, malicious, tortious, and resulted in harm to Cigna.   As a consequence, Cigna is entitled to recover exemplary damages.

## VIII.
## ATTORNEYS' FEES

162.   Cigna realleges and incorporates by reference the foregoing paragraphs of the Complaint.

163.   Cigna seeks to recover its reasonable and necessary attorneys' fees and costs incurred in connection with prosecuting this action under, without limitation,

HOU:3645028.1

Chapter 37 of the Texas Civil Practice and Remedies Code, and in the alternative, 29 U.S.C. § 1132(g)(1).

## IX.
## CONDITIONS PRECEDENT

164.    Cigna has performed all conditions precedent, or they have otherwise been waived.

## X.
## JURY DEMAND

165.    Cigna demands a trial of this action by jury on all issues.

## XI.
## PRAYER

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company respectfully request that Defendants Elite Center for Minimally Invasive Surgery, Houston Metro Ortho and Spine Surgery Center LLC, and Elite Ambulatory Surgery Centers LLC d/b/a Elite Surgical Affiliates be cited to appear and answer, and that on final trial hereof, Cigna have judgment against this Defendant for the following:

    a.      An award of both actual damages and consequential damages;

    b.      An award of exemplary damages;

    c.      Equitable relief as requested herein;

    d.      Declaratory and injunctive relief as requested herein;

    e.      Reasonable and necessary attorneys' fees;

    f.      Costs of court;

    g.      Prejudgment and post-judgment interest; and

HOU:3645028.1

h.   Such other and further relief at law or in equity to which Cigna may be justly entitled.

Respectfully submitted,

**ANDREWS KURTH LLP**

By: *s/ John B. Shely*

    **John B. Shely**
    Texas State Bar No. 18215300
    Southern District of Texas No. 7544
    jshely@andrewskurth.com
    **Laura Trenaman**
    Texas State Bar No. 00798553
    Southern District of Texas No. 23815
    lauratrenaman@andrewskurth.com
    **Brian C. Pidcock**
    Texas State Bar No. 24074895
    Southern District of Texas No. 1654553
    brianpidcock@andrewskurth.com
    600 Travis Street, Suite 4200
    Houston, Texas 77002
    (713) 220-4200

    **ATTORNEYS FOR PLAINTIFFS
    CONNECTICUT GENERAL LIFE
    INSURANCE COMPANY AND
    CIGNA HEALTH AND LIFE
    INSURANCE COMPANY**