IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE | § | |
| INSURANCE COMPANY AND | § | |
| CIGNA HEALTH AND LIFE | § | JURY DEMANDED |
| INSURANCE COMPANY | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:16-cv-571 |
| | § | |
| ELITE CENTER FOR MINIMALLY | § | |
| INVASIVE SURGERY LLC; | § | |
| HOUSTON METRO ORTHO AND | § | |
| SPINE SURGERY CENTER LLC; and | § | |
| ELITE AMBULATORY SURGERY | § | |
| CENTERS LLC d/b/a ELITE | § | |
| SURGICAL AFFILIATES | § | |

### Defendants' Motion to Dismiss and
### Memorandum of Law in Support

In this lawsuit, Cigna seeks to recover every penny paid for medical services provided by Defendants to Cigna's plan members over a more than four-year period. Similar claims have met with defeat in courts across the country, including federal district courts, the Fifth Circuit, and the United States Supreme Court. Closer to home, Cigna's allegations and claims in this case mirror the failed allegations and claims asserted by Cigna in *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp.* and *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare.* For the same reasons, Cigna's claims should be dismissed here.

# Table of Contents

Table of Authorities ..................................................................................................... iii

Background ....................................................................................................................... 1

Legal Standard ................................................................................................................ 2

Argument .......................................................................................................................... 2

I.     Cigna's state-law claims on plans governed by ERISA are preempted. ............... 3

II.    Cigna's claim for equitable relief under § 502(a)(3) of ERISA fails. ................... 6

     A.     Cigna's interpretation of its plan terms is legally incorrect. ..................... 7

     B.     Even if Cigna's plan interpretation were not legally incorrect, Cigna cannot recover any ERISA overpayments because its claims are not equitable in nature. ............................................................................................ 9

          i.     Cigna's claim for equitable relief based on the "tracing" method. . 10

          ii.     Cigna's claim for equitable relief based on lien by agreement. ....... 12

          iii.     Cigna's claim for equitable relief based on an injunction or declaration. .............................................................................................. 14

III.     Cigna's ERISA claims are barred by a two-year limitations period ...................... 16

IV.     Cigna's state-law claims fail as a matter of law. ....................................................... 17

     A.     Cigna's fraud and negligent misrepresentation claims are substantively and technically deficient. ................................................................................ 17

          i.     Cigna's claims do not sound in fraud. .................................................. 18

          ii.     Cigna did not allege a misrepresentation. ............................................ 19

          iii.     Cigna failed to plead fraud with particularity. .................................... 20

     B.     Cigna's tortious interference claims fail because the Elite Centers cannot tortuously interfere with contracts assigned to them. ................................... 21

     C.     Cigna's quasi-contractual claims are barred by the existence of the express contract Cigna alleges, and moreover, equity would not support them. .... 21

     D.     Cigna's claims for violations of state statutory provisions fail. ................... 22

Conclusion ........................................................................................................................ 24

## Table of Authorities

**Page(s)**

CASES

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004) ................................................................................3, 4

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.,*
13-CV-3422-WJM-CBS, 2015 WL 1041515 (D. Colo. Mar. 6, 2015).................3, 11, 15, 19

*Aschcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................................2

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
343 F.3d 719 (5th Cir. 2003), *opinion modified on denial of reh'g,* 355 F.3d 356 (5th Cir. 2003) ........................................................................................18

*BMG Direct Mktg., Inc. v. Peake,*
178 S.W.3d 763 (Tex. 2005)........................................................................16

*Brown v. De La Cruz,*
156 S.W.3d 560 (Tex. 2004)........................................................................22

*Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.,*
756 F.3d 356 (5th Cir. 2014) ..............................................................2, 7, 13

*Central States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.,*
771 F.3d 150 (2d Cir. 2014) .......................................................................13

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC,*
CIV.A. DKC 14-2376, 2015 WL 4394408 (D. Md. July 15, 2015) ..........................2, 11, 13

*Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC,*
4:13-CV-3291, 2016 WL 3077405 (S.D. Tex. June 1, 2016) .....2, 3, 5, 6, 7, 9, 11, 13, 14, 15, ................................................................................17, 18, 22, 23

*Edwards v. Mid-Continent Office Distributors, L.P.,*
252 S.W.3d 833 (Tex. App.—Dallas 2008, pet. denied)....................................21

*Egelhoff v. Egelhoff,*
532 U.S. 141 (2001) ....................................................................................4

*Fortune Prod. Co. v. Conoco, Inc.,*
52 S.W.3d 671 (Tex. 2000)..........................................................................21

*Gedalia v. Whole Foods Mkt. Services, Inc.*,
   53 F. Supp. 3d 943 (S.D. Tex. 2014)................................................................20

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ............................................................7, 10, 14

*Harris Methodist Fort Worth v. Sales Support Servs., Inc. Emp. Health Care Plan*,
   426 F.3d 330 (5th Cir. 2005)...............................................................5

*Holloway v. Skinner*,
   898 S.W.2d 793 (Tex. 1995)................................................................21

*Imperial Trading Co., Inc. v. HCA Inc.*,
   No. 10-1945, 2010 WL 3489362 (S.D. Tex. Sept. 1, 2010) ...............................5, 6

*Kougl v. Xspedius Mgmt. Co. of Dallas/Ft. Worth, L.L.C.*,
   Case No. 3:04-cv-2518-D, 2005 WL 1421446 (N.D. Tex. June 1, 2005) ...........................20

*Mayeaux v. La. Health Serv. & Indem. Co.*,
   376 F.3d 420 (5th Cir. 2004)................................................................4, 6

*Montanile v. Bd. of Trs. of the Nat'l Elevator Ind. Health Benefit Plan*,
   136 S. Ct. 651 (2016) .......................................................................9, 10

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015)................................................2, 6, 9, 16, 18

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995) .........................................................................4

*O'Neill v. CitiMortgage, Inc.*,
   Civil Action No. 4:13-cv-656-O, 2014 WL 1199338 (N.D. Tex. Mar. 24, 2014)..............22

*Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc.*,
   637 F.2d 357 (5th Cir. 1981)................................................................16

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ..........................................................................4

*Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*,
   29 S.W.3d 74 (Tex. 2000)...................................................................21, 22

*Reid v. Aransas Cnty.*,
   805 F. Supp.2d 322 (S.D. Tex. 2011) .......................................................23

*Sereboff v. Mid Atl. Med. Servs., Inc.,*
    547 U.S. 356 (2006) ............................................................................... 7

*Stable Energy, L.P. v. Kachina Oil & Gas, Inc.,*
    52 S.W.3d 327 (Tex. App.—Austin 2001, not pet.) ........................... 21

*Verizon Emp. Benefits Comm. v. Adams,*
    No. Civ. A. 3:05-CV-1793-M, 2006 WL 66711 (N.D. Tex. Jan. 11, 2006) ........................ 15

*Williams v. WMX Techs., Inc.,*
    112 F.3d 175 (5th Cir. 1997) ............................................................... 20

**STATUTES**

29 U.S.C. § 1132(a)(3) ................................................................................. 7

29 U.S.C. § 1144 ........................................................................................... 3

## Background

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Companies (collectively, "Cigna") are managed-care companies that administer healthcare benefit claims for employee health and welfare benefit plans. (Doc. No. 1 at ¶ 2.) The benefit plans administered by Cigna provide coverage for healthcare services provided by "in-network" providers and "out-of-network" providers. *Id.* at ¶ 2. In-network providers contract with Cigna to provide services at a reduced rate. *Id.* at ¶ 21. Out-of-network providers do not contract with Cigna to provide services at a reduced rate and, instead, set their own rates for services rendered to patients. *Id.* at ¶ 22.

The Defendants in this case—Elite Center for Minimally Invasive Surgery LLC ("Elite") and Houston Metro Ortho and Spine Surgery Center LLC ("Houston Metro") (collectively, the "Elite Centers")—were ambulatory surgery centers during the relevant time period. *Id.* at ¶ 5. The Elite Centers were out-of-network providers partly owned and managed by the third defendant in this case, Elite Ambulatory Surgery Centers LLC d/b/a Elite Surgical Affiliates ("Elite Surgical Affiliates") (and together with the Elite Centers, the "Defendants"). *Id.* at ¶ 5. The Elite Centers routinely obtained an assignment of benefits from Cigna's plan members. *Id.* at ¶ 71. The Elite Centers then provided services to Cigna's plan members and, as assignee of the plan members, submitted claims for reimbursement to Cigna. *Id.* at ¶¶ 67, 70-71. For years, Cigna paid, at least in part, the Elite Centers for services provided to its plan members. *Id.* at ¶¶ 70-72. But in 2014, Cigna began to interpret its plans in a different manner and refused

thereafter to pay the Elite Centers for the services it rendered to Cigna's members. *Id.* at ¶ 80-82. Two years later, Cigna filed this lawsuit and now attempts to claw back payments voluntarily made to the Elite Centers. It is an audacious claim, and one that holds no hope of success.

### Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to determine whether a plaintiff possesses a cognizable claim. A court makes that determination by excluding "threadbare recitals of the elements . . . supported by mere conclusory statements." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). After discarding conclusory allegations, a court turns to the well-pleaded facts to determine whether those facts "permit the court to infer more than the mere possibility" that the plaintiff is entitled to relief. *Id.* at 679. A claim withstands a motion to dismiss only if the well-pleaded facts establish a plausible claim on its face. *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 360 (5th Cir. 2014).

### Argument

Recently, Judge Hoyt concluded that "Cigna's claim(s) for reimbursement of overpayments made pursuant to ERISA and/or common law fail, as a matter of law." *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, 4:13-CV-3291, 2016 WL 3077405, at *2 (S.D. Tex. June 1, 2016). Judge Hoyt was not the first to cast doubt on Cigna's claims. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 196, 205 (5th Cir. 2015) ("There are strong arguments that Cigna's plan interpretation is not 'legally correct'"; rejecting Cigna's argument that its claims sound in fraud); *Conn. Gen. Life Ins.*

*Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, CIV.A. DKC 14-2376, 2015 WL 4394408, at
*8 (D. Md. July 15, 2015) (rejecting Cigna's ERISA claims as resting on "only a bald
assertion, devoid of any factual support"); *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare,
Inc.*, 13-CV-3422-WJM-CBS, 2015 WL 1041515, at *4, *8 (D. Colo. Mar. 6, 2015) (rejecting
both Cigna's ERISA claims and fraud claims); Am. Countercl., *N. Cypress Med. Ctr. v.
Cigna Healthcare*, Doc. No. 292 at 7, 4:09-cv-2556 (S.D. Tex. April 20, 2012) (noting that
this Court held Cigna's state-law claims "were completely preempted by ERISA")
(citing Doc. No. 283 at 19, 30-31). In *Humble*, Judge Hoyt determined that "Cigna's
interpretation of the 'exclusionary' language as rejecting covered services, was
improper and violative of the plans' terms." *Humble*, 2016 WL 3077405 at *18. Relying
on the same interpretation rejected by Judge Hoyt, Cigna brings claims under state-law
and ERISA to recover alleged "overpayments" from the Defendants.

**I.    Cigna's state-law claims on plans governed by ERISA are preempted.**

Cigna alleges state-law claims for common law fraud, money had and received,
negligent misrepresentation, promissory estoppel, unjust enrichment, tortious
interference with contract, and declaratory judgment. Each arises from a common
nucleus of allegations: Cigna overpaid claims submitted by the Elite Centers for
reimbursement pursuant to the terms of Cigna's plans. Preempted by ERISA, these
claims should be dismissed.

ERISA broadly preempts state law for plans covered by ERISA. *See* 29 U.S.C. §
1144 (ERISA provisions "shall supersede any and all state laws insofar as they may now
or hereafter relate to any [ERISA] employee benefit plan."); *see also Aetna Health Inc. v.*

*Davila*, 542 U.S. 200, 208 (2004) (explaining that "ERISA includes expansive pre-emption provisions"). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).

State-law claims that "relate to" an employee benefit plan fall under ERISA's express pre-emption clause. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987). "[A] state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Id.* (citations omitted). "ERISA preempts a state law claim if a two-prong test is satisfied: (1) [t]he state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004).

Beginning with the second prong, Cigna's state-law claims directly affect the relationship among traditional ERISA entities. Cigna alleges that "[t]he majority of Cigna's plans at issue in this case are governed by ERISA . . . ." (Doc. No. 1 at ¶ 142.). Cigna also alleges that it is a fiduciary of the ERISA plans. *Id.* at ¶¶ 17, 33, 143. And Cigna paid, if it paid at all, the Elite Centers pursuant to assignments of benefits from

Cigna's plan members. *Id.* at ¶¶ 146-148. On this basis, the Elite Centers qualify as beneficiaries of the ERISA plans. *See Harris Methodist Fort Worth v. Sales Support Servs., Inc. Emp. Health Care Plan*, 426 F.3d 330, 333–34 (5th Cir. 2005) ("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim."); *Imperial Trading Co., Inc. v. HCA Inc.*, No. 10-1945, 2010 WL 3489362, at *2 (S.D. Tex. Sept. 1, 2010) ("The claims directly affect the relationship among traditional ERISA entities—Plaintiffs are the Plan and the Plan Administrator, and Defendant is alleged to be a beneficiary of the Plan, having been paid pursuant to an assignment from the Plan participant.").

As to the first prong, Cigna's state law claims address an area of exclusive federal concern. Cigna claims that it overpaid the Elite Centers under the terms of ERISA plans. As explained above, prior to providing out-of-network services, the patients executed an assignment of benefits that assigned his or her rights under Cigna's plans to the Elite Centers. As assignee of the patient's benefits, the Elite Centers submitted a claim to Cigna for reimbursement. Whether Cigna improperly paid the Elite Centers on these claims depends entirely on the terms of Cigna's ERISA plans. *See Humble*, 2016 WL 3077405 at *13 (finding Cigna's claims for unjust enrichment and money had and received preempted by ERISA, and explaining that "[r]egardless of how Cigna frames its claims for overpayments, its alleged causes of action will require construction of the plans' terms and, as such, will fall squarely within ERISA's preemptive scope"). As such, the Elite Centers' right, as an assignee, to receive benefits is directly implicated by

Cigna's claims and is an area of exclusive federal concern. *Mayeaux*, 376 F.3d at 432 (identifying "the right to receive benefits under the terms of an ERISA plan" as "an area of exclusive federal concern"); *see, e.g., Imperial Trading*, 2010 WL 3489362 at *2 (explaining that state-law claims that "seek to recover ERISA benefits that they allege were improperly paid to Defendant" . . . "'relate to' the ERISA Plan and, as a result, are preempted").

Courts in this district have determined that Cigna's state-law claims are preempted by ERISA. In *North Cypress*, this Court held that Cigna's similar state-law claims were preempted by ERISA and required Cigna to replead under § 502(a)(3) of ERISA. Am. Countercl., *N. Cypress Med. Ctr. v. Cigna Healthcare*, Doc. No. 292 at 7, 4:09-cv-2556 (S.D. Tex. April 20, 2012) (noting that this Court held Cigna's state-law claims "were completely preempted by ERISA") (quoting Doc. No. 283 at 19, 30-31); *accord N. Cypress*, 781 F.3d at 190 ("The district court dismissed [Cigna's state-law claims for fraud, negligent misrepresentation, and unjust enrichment], concluding they were preempted by ERISA."); *see also Humble*, 2016 WL 3077405 at *12-13 (Cigna's claims for money had and received and unjust enrichment were preempted by ERISA). Although this Court's rationale in *North Cypress* is not available to the Defendants—the Court's opinion is sealed—the result in this case should be the same, and Cigna's state-law claims should be dismissed.

## II.     Cigna's claim for equitable relief under § 502(a)(3) of ERISA fails.

Cigna asserts a claim for equitable relief under § 502(a)(3) of ERISA. Section 502(a)(3) authorizes an ERISA fiduciary to bring a civil suit "(A) to enjoin any

act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). "The United States Supreme Court has repeatedly explained that the phrase 'appropriate equitable relief' within the meaning of § 502(a)(3)(B), is limited to 'those categories of relief that were typically available in equity[.]'" *Humble,* 2016 WL 3077405 at *9 (citing *Sereboff v. Mid Atl. Med. Servs., Inc.,* 547 U.S. 356, 361 (2006)). "Stated another way, a fiduciary seeking restitution of overpayments under § 502(a)(3) must demonstrate that the relief sought is equitable rather than legal." *Id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204,  212-13 (2002) ("[W]hether [a claim for restitution] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought.")). "'Simply framing a claim [for restitution] as equitable relief is insufficient to escape a determination that the relief sought is legal.'" *Id.* (quoting *Health Special Risk,* 756 F.3d at 365).

Cigna's § 502(a)(3) claim fails for at least two reasons. First, Cigna's interpretation of its plan language is not legally correct. Second, even if Cigna's interpretation were legally correct, Cigna cannot recover any ERISA overpayments because its claims are not equitable in nature.

### A.     Cigna's interpretation of its plan terms is legally incorrect.

In its capacity as a fiduciary, Cigna alleges that it has been delegated discretionary authority to review and make claims decisions for benefits under its ERISA plans. (Doc. No. 1 at ¶ 143.) Based on this authority, Cigna alleges that it made

payments to Defendants that are not covered by the plans. *Id.* at ¶ 148. And why are these payments not covered by the ERISA plans? According to Cigna, the Elite Centers declined to charge Cigna's plan members for "the full amount of their cost-share obligations for out-of-network care." *Id.* at ¶ 145. If, Cigna contends, the Elite Centers did not collect a patient's full cost-share obligations for out-of-network care, the ERISA plans' exclusionary language barred coverage for those claims. *Id.* at ¶¶ 68-69. On this basis, Cigna alleges that the claims submitted for reimbursement by the Elite Centers contained charges that are not covered under the plans. *Id.* at ¶¶ 147-148.

Cigna identifies the relevant "exclusionary" language as: "(a) charges for which [the insured is] not obligated to pay for which [the insured is] not billed for or for which [the insured] would not have been billed for except that they were covered under this plan;" and "(b) charges which would not have been made if the person had no insurance." *Id.* at ¶¶ 47-49, 144-145. By making payments to the Elite Centers for claims that included charges not covered by the ERISA plans, Cigna alleges that it made "overpayments" to the Elite Centers that can be recovered pursuant to the ERISA plans' terms. *Id.* at ¶ 152. Applying this interpretation, Cigna seeks to recover from Defendants all alleged "overpayments." *Id.* at ¶ 154.

In *Humble,* Judge Hoyt rejected the interpretation advanced by Cigna in this case. Judge Hoyt explained:

> The Court is of the opinion that ERISA does not permit the interpretation embraced by Cigna. As previously stated, the Court's plain reading of the provision suggests that the exclusionary provision pointed to the obligation of the member/patient to be certain that the services sought at Humble, for example, were covered by the plan before the services were

> received as the insurance provided does not necessarily guarantee coverage for all of the members/patients' costs. Indeed, even a cursory reading of such language does not purport to excuse or absolve Cigna, as the claims administrator, from making payments where the services are covered by the plan and are properly billed. ERISA requires that summary plan language be written in a manner that an ordinary or average member/patient is reasonably apprised of his/her rights and obligations. . . . Hence, Cigna's "exclusionary" language interpretation does not pass muster under the "average plan participant" test.

*Humble*, 2016 WL 3077405 at *18. Judge Hoyt's decision finds support with the Fifth Circuit's "skepticism" of Cigna's plan interpretation. *N. Cypress*, 781 F.3d at 196 ("There are strong arguments that Cigna's plan interpretation is not 'legally correct.'").

Not only did Judge Hoyt rule that Cigna's interpretation was not legally correct, he determined that by employing this interpretation to deny claims, Cigna abused its discretion as a claims administrator. *Humble*, 2016 WL 3077405 at *18. Because Cigna's plan interpretation is not legally correct, Cigna's claim for equitable relief to enforce the terms of its plans based on that interpretation must be dismissed.

### B. Even if Cigna's plan interpretation were not legally incorrect, Cigna cannot recover any ERISA overpayments because its claims are not equitable in nature.

In its complaint, Cigna makes a flawed attempt to plead a basis for equitable relief. Under Supreme Court precedents, "whether the remedy a plaintiff seeks 'is legal or equitable depends on [(1)] the basis for [the plaintiff's] claim and [(2)] the nature of the underlying remedies sought.'" *Montanile v. Bd. of Trs. of the Nat'l Elevator Ind. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016). "'To determine how to characterize the basis of a plaintiff's claim and the nature of the remedies sought, [the Supreme Court] turn[s] to standard treatises on equity, which establish the 'basic contours' of what equitable relief

was typically available in premerger equity courts.'" *Id.* (citing *Knudson,* 534 U.S. at 217).

       **i.**    **Cigna's claim for equitable relief based on the "tracing" method.**

Cigna attempts to establish a basis for equitable relief based on the "tracing" method. To that end, Cigna alleges that specifically identifiable overpayments were made directly to Defendants. (Doc. No. 1 at ¶ 151.) Cigna also alleges that such payments were deposited into a single account in each of the Defendants' names or controlled by Defendants. *Id.* But here's where Cigna goes off the rails: Cigna claims it "has no reason to believe that Defendants have dissipated the overpayments on nontraceable items." *Id.* Stated another way, Cigna thinks that the Defendants had no expenses to pay and, therefore, just left those funds undisturbed. With that leap, Cigna alleges that Defendants are in possession and control of specifically identifiable overpayments. *Id.*

Recently, in *Montanile v. Board of Trustees of the National Elevator Industries Health Benefit Plan,* the Supreme Court explained that "[e]quitable liens . . . are ordinarily enforceable only against a specifically identified fund because an equitable lien 'is simply a right of a special nature over the thing . . . so that the very thing itself may be proceeded against in an equitable action.'" *Montanile*, 136 S. Ct. at 659. "[A]s a general rule, plaintiffs cannot enforce an equitable lien against a defendant's general assets." *Id.* at 660. "When a participant dissipates the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for 'appropriate equitable relief.'" *Id.* at 655. Thus, under section 502(a)(3)of ERISA, a fiduciary must seek to recover "against a specifically

identified fund," which has not been dissipated on nontraceable items.

In *Humble*, over the span of a nine-day bench trial, "Cigna submitted no evidence that the alleged overpayments [were]: (i) specifically identifiable; (ii) kept in separate accounts by Humble; or (iii) that they [were] separate and distinct from Humble's general assets." *Humble*, 2016 WL 3077405 at *2, 11. Judge Hoyt explained that "Cigna [made] only a bare assertion that the overpayments it [sought], which were purportedly made between 2010 and 2014, [were] still within Humble's possession and identifiable from Humble's general assets." *Id.* at *11. Without more, Judge Hoyt explained that "such a bald assertion" is not sufficient to entitle Cigna to equitable relief. *Id.; see also Advanced Surgery Ctr. of Bethesda*, 2015 WL 4394408 at *8-10 ("The Cigna entities' complaint fails to establish that the §502(a)(3)(B) claim is 'equitable' in nature because its allegations do not plausibly allege that the overpayments are currently in the [defendant's] possession and are specifically identifiable."); *Arapahoe Surgery Ctr.*, 2015 WL 1041515 at *4 (finding "that the overpayments sought by Cigna [were] not in a specifically identifiable fund, and thus . . . not properly the subject of a §502(a)(3) claim" where "Cigna ha[d] not alleged that the overpayments [were] located in a separate fund, that they were paid by any third party, or that they [were] otherwise distinct from the ASCs' general assets").

Here, Cigna's allegations do not plausibly allege that any "overpayments" are within the Elite Centers' possession or control and distinct from the Elite Centers' general assets. While Cigna alleges that the payments were deposited in a single account, Cigna fails to allege how this alleged account is distinct from the Elite Centers

general assets. (Doc. No. 1 at ¶ 155.) For example, Cigna does not allege that all payments were deposited into a "Cigna Payments Account," which is distinct from payments received from other insurance companies. Moreover, Cigna asks this Court to suspend disbelief and believe that the Elite Centers have not spent or transferred any of the $8 million allegedly received from Cigna. *Id.* at ¶ 151. In *Humble,* after a full discovery and a trial on the merits, the Court determined that Cigna failed to present any evidence to establish a basis for equitable relief under the "tracing" method. Here, while Cigna includes many of the "magic words" in its complaint, its allegations are simply implausible. As such, Cigna has not plausibly alleged that the § 503(a)(3) claim is "equitable" in nature and, therefore, its claim should be dismissed.

### ii.    Cigna's claim for equitable relief based on lien by agreement.

As an alternative to tracing, Cigna alleges that any overpayment is subject to an equitable lien by agreement. (Doc. No. 1 at ¶ 152.) To establish a lien by agreement, Cigna relies on the following plan provisions:

> 'When an overpayment has been made by [Cigna], [Cigna] will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment.'; 'When an overpayment has been made by [Cigna] [Cigna] will have the right at any time to: (a) recover that overpayment from the person to whom or on whose behalf it was made; or (b) offset the amount of that overpayment from a future payment.'; "When an overpayment has been made by Cigna, Cigna will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment.'

*Id.* at ¶¶ 34, 152.

"'ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets.'" *Humble*, 2016 WL 3077405 at *9 (quoting *Health Special Risk*, 756 F.3d at 365). A court therefore "must look to the plan documents to determine when an equitable lien is appropriate, whether by plan terms or by implication." *Id.*

In *Humble*, Cigna similarly contended that its plans created an equitable lien. *Id.* Analyzing similar language, Judge Hoyt determined:

> [T]his provision, standing alone, is insufficient to create a lien or constructive trust as it does not: mention the words "lien" or "trust"; state that any overpayment shall constitute a charge against any particular proceeds; give rise to a security interest in such proceeds; even suggest that a trust is being sought for Cigna's and/or the plan's benefit on any particular provider payments; or advise of the need for any particular provider to preserve, segregate or otherwise hold such funds or proceeds in trust.

*Id.*; *see also Advanced Surgery Ctr. of Bethesda*, 2015 WL 4394408 at *8 – 10 (construing similar Cigna plan language and holding "[t]he language used in the Overpayment Provision cannot be understood by a plan member—or a provider that is not a party to the plan—as asserting an equitable lien or constructive trust on plan overpayments to providers."); *Central States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 157 (2d Cir. 2014) ("There is no equitable lien by agreement because there is no agreement between Central States and Gerber that 'specifically identified a particular fund, distinct from [Gerber's] general assets' nor 'a particular share of that

fund to which [Central States] was entitled.'"). Here, as in *Humble*, Cigna fails to identify a provision which creates a lien or constructive trust. As a result, Cigna has not plausibly alleged that the § 503(a)(3) claim is "equitable" in nature and, therefore, its claim should be dismissed.

### iii.  Cigna's claim for equitable relief based on an injunction or declaration.

Cigna also seeks declaratory and injunctive relief. In its ERSIA claim, with respect to money in the possession of Defendants, Cigna seeks, among other things, a constructive trust over the money held by Defendants, an injunction prohibiting Defendants from bringing their bank accounts below the amount of Cigna's alleged overpayments, an accounting of any portion of the overpayments no longer in Defendants' possession or control, and a declaration that Cigna may offset the amount of the overpayments from future payments to Defendants. (Doc. No. 1 at ¶155.) Cigna seeks similar relief in separately plead requests for injunctive relief and declaratory relief. *Id.* at ¶¶ 133-139.

In *Great-West Life & Annuity Ins. Co. v. Knudson*, the Supreme Court explained that a "demand for an injunction 'to enforce the reimbursement provision' or 'to compel a defendant to pay a sum of money past due under a contract or specific performance of a past due monetary obligation' was not appropriate equitable relief under ERISA, as such relief was not typically available in equity." *Humble*, 2016 WL 3077405 at *12 (citing *Knudson*, 534 U.S. at 210 – 11). Similarly, in *Verizon Emp. Benefits Comm. v. Adams*, the court held that "a plaintiff's requests 'to impose a constructive trust on the

overpayment of $220,106.94, *wherever it may be found,* and to receive equitable restitution in the same amount to recoup the assets that rightfully belong to the plan' coupled with its request to 'impose a constructive trust in the amount of $220,106.94 on the funds and/or equitable liens on the accounts, funds, or real property *where those funds may be traced*' sought merely to impose personal liability upon the defendant to pay money, an essential feature of a legal action rather than an equitable one." *Id.* (quoting *Verizon Emp. Benefits Comm. v. Adams,* No. Civ. A. 3:05-CV-1793-M, 2006 WL 66711, at *4 (N.D. Tex. Jan. 11, 2006)).

Relying on these cases, Judge Hoyt rejected Cigna's requests for declaratory and injunctive relief, explaining that Cigna's "request for an order requiring the return of funds, declaration that it is entitled to offset any overpayments from future payments to Humble as well as its declaration that it is entitled to recoup all overpayments paid to Humble are not appropriate requests for equitable relief under ERISA." *Humble,* 2016 WL 3077405 at *12. Judge Hoyt ruled that Cigna's "attempts to recharacterize" its "requests for monetary relief as equitable relief in the form of an injunction or declaration" fall short. *Id.; see also Arapahoe Surgery Ctr.,* 2015 WL 1041515 at *4 (stating that Cigna's request for declaratory relief "merely couches the restitution claim in the form of a declaration that it may obtain said restitution through offsetting future claims reimbursements. Such reframing does not change the nature of the relief sought, which falls outside the scope of § 502(a) because the amounts requested are not specifically identifiable funds."). The result here should be the same.

**III.    Cigna's ERISA claims are barred by a two-year limitations period.**

ERISA does not provide a limitations period. *See N. Cypress*, 781 F.3d at 204. However, a court looks to state law to determine the most "analogous cause of action." *Id.* In *North Cypress,* the Fifth Circuit agreed with this Court that Cigna's claim "is more akin to a claim for unjust enrichment than one for fraud." *Id.* at 205. On that basis, the Fifth Circuit concluded that a two-year statute of limitations was appropriate. *Id.* Cigna's claims against the Elite Centers are almost identical to the claims asserted against North Cypress. As such, a two-year limitations period should apply to Cigna's ERISA claims.

Assuming a two-year limitations period, Cigna may only seek to recover overpayments that "accrued" between March 3, 2014 and March 3, 2016. Typically, "[a] cause of action accrues when the events upon which it is based occur." *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir. 1981). Here, Cigna's overpayment claims accrued on the date of the alleged overpayment. Given that Cigna filed this lawsuit on March 3, 2016, a two-year limitations period bars any claim relating to overpayments made prior to March 3, 2014.

Additionally, Cigna should be prohibited from pursuing payments made after March 3, 2014. Cigna admits that, by March 4, 2014, it was aware of Defendants' alleged billing practices. *Id.* at ¶ 80. While Cigna generally pleads the discovery rule, Doc. No. 1 at ¶ 159, Cigna cannot avoid the fact that any payment made after March 4, 2014 was made voluntarily with full knowledge of the practices Cigna now alleges constitute fraud. *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768-69 (Tex. 2005) ("[A] party

who pays a claim is deemed to have made his own decision that it is justly due. If he thinks otherwise, he should resist. He should not pay out his money, leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back."). Thus, Cigna may not recover any "overpayments" pursuant to a § 502(a) ERSIA claim.

## IV.    Cigna's state-law claims fail as a matter of law.

Each of Cigna's state-law claims fails because it is premised on a legally incorrect interpretation of Cigna's plans and, with respect to ERISA plans, preempted. Alternatively, even if this Court determines that Cigna's interpretation is legally correct or its state-law claims are not preempted by ERISA, these claims should be dismissed on other grounds.

### A.    Cigna's fraud and negligent misrepresentation claims are substantively and technically deficient.

Fraud and negligent misrepresentation are two separate causes of action under Texas law. To plead fraud, a plaintiff must allege: (1) a party made a material representation; (2) the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the misrepresentation was made with the intention that it should be acted on by the other party; and (4) the other party relied on the misrepresentation and thereby suffered injury. *See Humble*, 2016 WL 3077405 at *14 (citations omitted). To plead negligent misrepresentation, a plaintiff must allege: (1) a party made a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation supplied false information for the guidance of others in their business;

and (3) the party that made the representation did not exercise reasonable care or competence in obtaining or communicating the information. *Id.* (citations omitted).

When both claims are predicated on the same alleged facts, federal courts subject both to Rule 9(b)'s particularity pleading standard. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003). Because Rule 9 allows intent to be alleged generally, the Elite Centers address the common elements of the two claims, referring to the two claims collectively as "fraud" for simplicity.

### i.    Cigna's claims do not sound in fraud.

As an initial matter, this Court has already determined that similar allegations by Cigna do not sound in fraud. *N. Cypress*, 781 F.3d at 204. The Fifth Circuit affirmed that determination. *Id.* at 205 ("[F]raud seems particularly inapt."). The allegations supporting Cigna's ERISA claim and fraud claim in *North Cypress* and in this action are markedly similar. *Compare* Doc. No. 1 at ¶¶ 74, 96, 147 *with* Answer & Countercl., *N. Cypress Med. Ctr. v. Cigna Healthcare*, Doc. No. 220 ¶¶ 43, 50  4:09-cv-2556; & Am. Countercl., *N. Cypress Med. Ctr. v. Cigna Healthcare*, Doc. No. 292 ¶¶ 6, 33 4:09-cv-2556 (S.D. Tex. April 20, 2012). Cigna's overpayment theory depends on its same flawed plan interpretation—regardless of the cause of action packaging Cigna's theory. Thus, in light of this Court's and the Fifth Circuit's determination that Cigna's overpayment theory does not sound in fraud, Cigna's allegations in this case cannot support a fraud claim. *N. Cypress*, 781 F.3d at 205 (quoting this Court's conclusion that Cigna's claim "hinge[d] on whether [ ] overpayments were made in contravention of the plan terms,

not on whether [North Cypress's] conduct was fraudulent").

ii.    **Cigna did not allege a misrepresentation.**

Cigna's fraud claim also fails because Cigna failed to allege any misrepresentation. In *Koenig v. Aetna Life Ins. Co.,* Judge Hoyt recently provided a framework for determining the types of representations a medical provider could make on an insurance claim form to trigger fraud liability. Under that framework, Judge Hoyt identified six representations potentially giving rise to fraud:

> [1] [the provider] fraudulently manipulated patient diagnosis codes, [2] miscoded procedures actually performed, [3] misrepresented the procedures performed, performed unnecessary medical procedures, [4] submitted related bills, [5] negligently performed medical procedures for which [the provider] seeks payments or [6] fraudulently induced [the insurer] to pay benefits for which no service was performed.

Day 10 Trial Tr. 186:1-9, *Koenig v. Aetna Life Ins. Co.*, Doc. No. 549, 4:13-cv-359 (S.D. Tex. May 25, 2015).[1]

Here, Cigna has not alleged that any of these representations occurred. (*See* Doc. No. 1.) And, in *Koenig*, when presented with allegations similar to those alleged by Cigna in this case, Judge Hoyt concluded that no misrepresentation occurred.  Day 10 Trial Tr. 186:10-14, *Koenig v. Aetna Life Ins. Co.*, Doc. No. 549, 4:13-cv-359 (S.D. Tex. May 25, 2015). Other courts have similarly rejected Cigna's fraud allegations finding no allegation of misrepresentation. *Arapahoe Surgery Ctr*, 2015 WL 1041515 at *8. Because Cigna fails to allege a misrepresentation, Cigna's claim for fraud should be dismissed.

---

[1]    Defendants are unable to access the final trial transcripts on PACER. But in the *North Cypress* case, North Cypress attached an excerpt from the rough transcript to *North Cypress' Notice of Controlling Court Decisions*, which was filed with this Court on May 16, 2016. *N. Cypress Med. Ctr. v. Cigna Healthcare*, Doc. No. 481-2, 4:09-cv-02556 (S.D. Tex. May 16, 2016). The page and line numbers cited herein are to the rough transcript.

### iii.  Cigna failed to plead fraud with particularity.

Cigna's 165-paragraph complaint is heavy on rhetoric, but light on particulars. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) ("A complaint can be long-winded . . . without pleading with particularity."). Rule 9(b) requires "a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* The Fifth Circuit "appl[ies] the rule with force, without apology." *Id.*

Cigna fails to specify when the Defendants allegedly made fraudulent statements. While Cigna alleges with specificity the dollar amount it seeks, it does not plead a single, specific date on which an alleged misrepresentation occurred. Cigna's lack of specificity—coupled with its failure to allege even a range of dates during which it contends the Defendants engaged in fraud—falls well short of Rule 9(b)'s requirement. *Gedalia v. Whole Foods Mkt. Services, Inc.*, 53 F. Supp. 3d 943, 959 (S.D. Tex. 2014) (dismissing fraud claim for not specifying on what date each alleged misrepresentation occurred); *Kougl v. Xspedius Mgmt. Co. of Dallas/Ft. Worth, L.L.C.*, Case No. 3:04-cv-2518-D, 2005 WL 1421446, at *5 (N.D. Tex. June 1, 2005) (dismissing fraud claim where "[t]he only reference to time is the vague assertion that the events occurred sometime [before a fixed date]"). Cigna also fails to identify who allegedly made fraudulent statements. Based on Cigna's complaint, Defendants know only their "general role," which this Court previously held falls short of Rule 9(b)'s requirement. *Gedalia*, 53 F. Supp. 3d at 959. Because Cigna's sweeping allegations fail to satisfy Rule 9(b)'s requirements, its fraud claim should be dismissed.

**B.    Cigna's tortious interference claims fail because the Elite Centers cannot tortuously interfere with contracts assigned to them.**

Texas courts are clear that one cannot interfere with its own contract. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). Texas courts are equally clear that the assignment of a contract passes the contractual relationship to the assignee, making it a party to the contract. *See Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 78 (Tex. 2000) (recognizing that an insurance company had a contractual relationship with several hospitals because its insureds assigned their policy rights to the hospitals). Cigna repeatedly alleges that its plan members assigned their rights to the Elite Centers. (Doc. No. 1 at ¶¶ 64, 71, 84, 86, 113, 122, 129, 146, 154). The assignments created a contractual relationship between Cigna and the Elite Centers. *See Prudential*, 29 S.W.3d at 78. And since a party cannot interfere with its own contract, Cigna's tortious interference claim fails.

**C.    Cigna's quasi-contractual claims are barred by the existence of the express contract Cigna alleges, and moreover, equity would not support them.**

Cigna's quasi-contractual claims are barred if an express contract governing the parties' relationship exists. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (unjust enrichment); *Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied) (money had and received); *Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, not pet.). Based on Cigna's allegations, these quasi-contractual claims are barred. As noted above, Cigna repeatedly alleges that its insureds assigned their rights under Cigna's plans to the Elite Centers. (Doc. No. 1 at ¶¶ 64, 71, 84, 86, 113, 122, 129, 146, 154). Under Texas

law, those assignments created a contractual relationship between Cigna and the Elite Centers. *See Prudential*, 29 S.W.3d at 78.

Had Cigna not pleaded itself out of these claims, its quasi-contractual claims would fail for the same reason Cigna's other claims fail: Cigna's reading of its plan is "legally incorrect," *Humble*, 2016 WL 3077405 at *17, and, thus, there is no injustice for equity to correct.

### D.    Cigna's claims for violations of state statutory provisions fail.

In its request for declaratory relief, Cigna seeks a declaration that "Defendants have violated Texas statutory laws concerning the billing of medical treatment and services provided to Cigna members" and "Defendants have violated Texas statutory laws concerning remuneration for patient referrals." (Doc. No. 1 at ¶ 139.) Cigna alleges violations of § 1204.055 of the Texas Insurance Code and §§ 101.203, 105.002, 552.03, 102.001, and 102.006 of the Texas Occupations Code. *Id.* at ¶ 88.

The Texas Supreme Court held that "'a statute which imposes a penalty must be strictly construed, and that a person who seeks to recover a penalty thereunder must bring himself clearly within the terms of the statute.'" *Humble*, 2016 WL 3077405 at *16 (quoting *Brown v. De La Cruz*, 156 S.W.3d 560, 564 (Tex. 2004)). "Legislative intent gives rise to a private cause of action only when legislative intent is manifestly clear." *Id.* "'The federal Declaratory Judgment Act . . . does not create a substantive cause of action . . . [it] is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Id.* (quoting *O'Neill v. CitiMortgage, Inc.*, Civil Action No. 4:13-cv-656-O, 2014 WL 1199338, at *4 (N.D. Tex. Mar. 24, 2014)).

"Thus, a plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists." *Id.* (quoting *Reid v. Aransas Cnty.*, 805 F. Supp.2d 322, 339 (S.D. Tex. 2011)).

First, Cigna fails to plead a violation of § 102.001 of the Texas Occupations Code. In *Humble*, Judge Hoyt evaluated whether the practices of Humble violated the Texas Occupations Code. *Id.* at *15. He explained that the statute was inapplicable "because the members/patients were patients of the 'referring' physicians." *Id.* Under those facts, Judge Hoyt determined that "the physicians did not, in fact, refer any members/patients to 'another' physician within the meaning of the statute." *Id.* Likewise, in this case, Cigna alleges that in-network physicians referred their patients to the Elite Centers. (Doc. No. 1 at ¶¶ 57, 58.) Cigna does not allege that another physician at the Elite Centers then performed the services. Instead, as plead, the same physician performs services for his or her patients—but he or she does so at the Elite Centers rather an in-network facility. As in *Humble*, Cigna has not alleged that the physicians referred any patients to "another" physician within the meaning of the statute and, as a result, Cigna's claim fails.

Second, Cigna, as a private litigant, may not bring a civil action to enforce the Texas Insurance Code and Texas Occupations Code. None of these statutes create a private right of action. *See* Tex. Ins. Code § 1204.055; Tex. Occ. Code §§ 101.203, 105.002, 552.03, 102.001, and 102.006; *see Humble*, 2016 WL 3077405 at *16 (holding that Cigna's claims for reimbursement based on the same statutory violations fail, explaining that "[e]qually compelling is the fact that the provisions of the Texas Occupation Code do

not provide a basis for a private right of action"). As plead, Cigna has failed to bring itself clearly within the terms of the statutes and, as a result, its claim must be dismissed.

## Conclusion

For the foregoing reasons, Cigna's claims should be dismissed *with prejudice*.

Respectfully submitted,

By: */s/ Craig B. Florence*_____
    Craig B. Florence
    State Bar No. 07158010
    Southern District of Texas No. 14743
    Sadie F. Butler
    State Bar No. 24085234
    Southern District of Texas No. 2924139
    **GARDERE WYNNE SEWELL LLP**
    3000 Thanksgiving Tower
    1601 Elm Street
    Dallas, Texas 75201
    (214) 999-3000

    **ATTORNEYS FOR DEFENDANTS ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC, HOUSTON METRO ORTHO AND SPINE SURGERY CENTER LLC, AND ELITE AMBULATORY SURGERY CENTERS LLC D/B/A ELITE SURGICAL AFFILIATES**

## Certificate of Service

On July 26, 2016, the undersigned electronically filed this document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

    */s/Craig Florence*_____
    Craig Florence