IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE | § | |
| INSURANCE COMPANY AND | § | |
| CIGNA HEALTH AND LIFE | § | JURY DEMANDED |
| INSURANCE COMPANY | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:16-cv-571 |
| | § | |
| ELITE CENTER FOR MINIMALLY | § | |
| INVASIVE SURGERY LLC; | § | |
| HOUSTON METRO ORTHO AND | § | |
| SPINE SURGERY CENTER LLC; and | § | |
| ELITE AMBULATORY SURGERY | § | |
| CENTERS, LLC d/b/a ELITE | § | |
| SURGICAL AFFILIATES | § | |

## THE ELITE CENTERS' ORIGINAL COUNTERCLAIMS

Defendants Elite Center for Minimally Invasive Surgery LLC ("Elite") and Houston Metro Ortho and Spine Surgery Center LLC ("Houston Metro") (each, an "Elite Center" and, collectively, the "Elite Centers") file their original counterclaims against plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") as follows:

### The Parties

1.      Counter-plaintiff/defendant Elite Center for Minimally Invasive Surgery LLC is a Texas limited liability company with its principal place of business in Harris County, Texas. Elite's members reside in Texas.

2.      Counter-plaintiff/defendant Houston Metro Ortho and Spine Surgery Center LLC is a Texas limited liability company with its principal place of business in Harris County, Texas. Houston Metro's members reside in Texas.

3.      The Elite Centers are the assignees of the claims asserted in this Counterclaim. Patients entered into various contracts for health insurance coverage with Cigna. The Elite Centers routinely received an "assignment of benefits" from a patient to whom the Elite Centers provided services. The Elite Centers have exhausted available administrative remedies.

4.      Plaintiffs/counter-defendants Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company are corporations organized under the laws of Connecticut with their principal place of business in Bloomfield, Connecticut and previously appeared in this case.

### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(f).

6.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which provides for original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides for original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in the Southern District of Texas.

## Introduction

9.      This is yet another case that exposes Cigna's scheme to avoid its statutory

and contractual obligations to reimburse out-of-network providers who provided

services to Cigna's plan members. Cigna administers healthcare benefit claims for self-

funded and insured employee health and welfare benefit plans. The benefit plans

cover—and Cigna members may obtain benefits for—services provided by in-network

and out-of-network providers. However, to "steer" patients away from out-of-network

providers, Cigna creates disincentives for plan members to obtain services provided by

out-of-network providers. Specifically, Cigna's benefit plans impose higher co-

insurance, deductibles, and co-payments for these services.

10.      Apparently, Cigna's "steerage" of patients to in-network providers failed

to meet Cigna's expectations. Relying on a legally incorrect interpretation of its plans,

Cigna systematically has refused to pay, in whole or in part, claims submitted for

reimbursement by the Elite Centers. On information and belief, Cigna financially

benefitted from these underpayments and non-payments. Cigna's refusal to reimburse

the Elite Centers violates its contracts with plan members, violates its statutory

obligations under ERISA, and constitutes an abuse of discretion as a fiduciary.

## Facts

11.      After opening in 2010 and 2012, respectively, Elite and Houston Metro

operated as out-of-network ambulatory surgical centers. Ambulatory surgical centers

are health-care facilities that provide surgical care to patients in a non-hospital setting.

In recent years, physicians have increasingly performed surgeries and procedures in

ambulatory surgical centers. In general, ambulatory surgery centers like the Elite Centers provide high-quality care to patients, which results in positive patient outcomes, low infection rates, and high patient satisfaction.

12.     The Elite Centers focused on providing superior service to patients. They assembled and retained a highly-skilled staff, which was specially trained for the particular surgical specialty performed at the facility. The Elite Centers' smaller facilities, with fewer operating rooms, allowed the staff to focus on patient care. This not only ensured that the patient received high-quality care but also minimized stress often associated with surgery.

13.     As out-of-network providers, the Elite Centers had not contracted with any insurance company—including Cigna—to provide health care services at pre-negotiated rates. Nevertheless, the Elite Centers provided services to numerous patients who were members of employee health and welfare benefit plans. Some benefit plans are sponsored and funded by employers and administered by Cigna; others are fully insured by Cigna. On information and belief, a majority of these benefit plans are subject to ERISA. The remaining benefit plans—those sponsored by governmental and church employers—are not subject to ERISA. Regardless, these benefit plans allow a patient to seek medically-necessary healthcare treatment from out-of-network providers.

14.     Under at least some of the benefit plans, Cigna has been delegated discretionary authority in the administration of the plan. On information and belief, Cigna has discretionary authority over the management of the ERISA plans,

management of the assets of the ERISA plans, or the administration of claims submitted pursuant to the ERISA plans. Using this discretion, Cigna makes determinations with respect to benefit claims and, in doing so, interprets provisions of the benefit plans. Through these actions, Cigna functions as the administrator of the plans. Cigna is a fiduciary of these benefit plans.

15.     Prior to scheduling services for a patient, the Elite Centers contacted Cigna to confirm that the patient's benefit plan covered the services. Without contacting Cigna, the Elite Centers did not have access to coverage details of a patient's benefit plan. When confirming the coverage details of a patient's benefit plan, the Elite Centers disclosed to Cigna the Elite Centers' status as an out-of-network provider. For each patient, Cigna confirmed the patient's eligibility, coverage, and benefits for the services. Relying on Cigna's confirmation, the Elite Centers scheduled services for the patient.

16.     Prior to receiving services from an Elite Center, a patient executed an assignment of benefits. By this assignment of benefits, the patient assigned his or her medical benefits and insurance reimbursement rights to the Elite Centers. However, a patient who executed an assignment of benefits remained financially responsible for payment to the Elite Centers regardless of any insurance or benefits payment. The Elite Centers did not waive a patient's co-insurance payment in exchange for an executed assignment of benefits. Instead, the Elite Centers routinely collected payment from the patient and, after providing services, submitted a claim to Cigna for reimbursement.

17.     Until March 2014, Cigna typically paid at least a portion of the claims that the Elite Centers submitted to Cigna for reimbursement. On the claims that Cigna did pay prior to March 2014, the Elite Centers believe that Cigna underpaid the claims.

18.     On or about March 4, 2014, Houston Metro received a letter from Cigna. In this letter, Cigna represented to Houston Metro that it had conducted an "audit" of claims submitted by Houston Metro and paid by Cigna. Cigna stated that the "audit revealed that [Houston Metro] waive[d] in whole or in part the full out-of-network cost share obligation of Cigna customers." Cigna stated that Houston Metro's alleged "practice of waiving in whole or in part the full out-of-network cost share obligation of Cigna's customers violates the terms and conditions of Cigna health benefits plans and renders [Houston Metro's] charges non-coverable." To avoid its obligation to make payments, Cigna demanded that Houston Metro provide additional information and documentation relating to a patient's payments or financial conditions. If Houston Metro did not satisfy Cigna's demand "to Cigna's satisfaction," Cigna stated that it would "deny the claim until [Houston Metro] submits the requested documentation." On or around the same date, Elite received a similar letter from Cigna. Relying on these allegations, Cigna stopped paying Elite, in whole or in part, on virtually all claims submitted for reimbursement to Cigna.

19.     When Cigna actually denied a claim, the Elite Centers appealed Cigna's adverse benefits determination. To date, Cigna has not reimbursed the Elite Centers for all of the claims. As part of their appeal, the Elite Centers requested that Cigna provide information pursuant to ERISA. The information requested included: (i) the specific

reasons for the adverse determination, (ii) reference to the specific plan provision relied upon in making the adverse determination, (iii) any information that the Elite Centers should provide to complete the claim, and an explanation as to why that information is required, (iv) a description of the plan's review procedures and time limits, (v) a copy of the master plan, and (vi) a copy of the summary plan description for the plan. With respect to numerous claims, Cigna failed to provide the requested information to the Elite Centers.

## Causes of Action

### Breach of Contract

20.     The Elite Centers incorporate by reference the preceding paragraphs.

21.     Patients entered into various contracts with Cigna for health insurance coverage or participated in employee health and welfare benefit plans administered by Cigna.

22.     Prior to obtaining services from the Elite Centers, these patients executed assignments of benefits, which assigned the patient's medical benefits and reimbursement rights to the Elite Centers. As a result of the assignments of benefits, the Elite Centers stand in the shoes of the patient.

23.     After receiving assignments of benefits from the patients, the Elite Centers provided services to these patients.

24.     Patients' contracts with Cigna or employee health and welfare benefit plans provide for coverage for the Elite Centers' services.

25.     The terms of the patients' contracts with Cigna or employee health and welfare benefit plans entitle the Elite Centers to reimbursement from Cigna for these covered services.

26.     The Elite Centers submitted requests for reimbursement from Cigna. Until March 2014, Cigna reimbursed at least a portion of the claims submitted by the Elite Centers. On the claims that Cigna did pay prior to March 2014, Cigna underpaid the Elite Centers. Since March 2014, Cigna has not paid the Elite Centers, in whole or in part, for many claims submitted for reimbursement in accordance with the terms of its plans.

27.     Cigna's conduct is a breach of the patient's contracts or employee health and welfare benefit plans.

28.     As a result of Cigna's breaches, the Elite Centers have suffered damages.

### Quantum Meruit/Unjust Enrichment

29.     The Elite Centers incorporate by reference the preceding paragraphs.

30.     In the alternative, the Elite Centers assert a claim against Cigna under the theory of quantum meruit/unjust enrichment. The Elite Centers provided valuable services to Cigna's plan members. Pursuant to an assignment of benefits, the Elite Centers submitted claims for reimbursement to Cigna for the services provided to its plan members. Cigna has failed, in whole or in part, to pay the benefits owed to the Elite Centers as the assignee of its plan members' benefits.

---

31.     Cigna has wrongfully secured or received a benefit, which would be unconscionable for Cigna to retain. As a result, Cigna should make restitution to the Elite Centers for the amounts Cigna was unjustly enriched.

### Promissory Estoppel

32.     The Elite Centers incorporate by reference the preceding paragraphs.

33.      The Elite Centers contacted Cigna to confirm that the patient's benefit plan covered the services prior to scheduling services for a patient.

34.     The Elite Centers did not have access to coverage details of a patient's benefit plan.

35.     The Elite Center disclosed to Cigna the Elite Center's status as an out-of-network provider.

36.     For each patient, Cigna confirmed the patient's eligibility, coverage, and benefits for the services. Based on Cigna's confirmation of the patient's eligibility, coverage, and benefits, the Elite Centers scheduled and performed services for the patient.

37.     The Elite Centers reasonably and substantially relied on Cigna's representations to its detriment.

38.     The Elite Centers' reliance on Cigna's confirmation of the patient's eligibility, coverage, and benefits for the services was foreseeable by Cigna.

39.     Injustice can only be avoided by enforcing Cigna's promise to provide coverage for the services performed by the Elite Centers for the patients.

## ERISA – Failure to Comply with Terms of Benefit Plans

40.     The Elite Centers incorporate by reference the preceding paragraphs.

41.     Section 502(a)(1)(B) of ERISA authorizes a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan to recover benefits due under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Additionally, section 502(a)(3) of ERISA authorizes a participant or beneficiary to bring a civil action "to obtain [] appropriate equitable relief" to (i) redress any violation of ERISA or the terms of the plan or (ii) enforce any provision of ERISA. 29 U.S.C. §1132(a)(3).

42.     As assignees of a plan beneficiary under section 502(a) of ERISA, health care providers, like the Elite Centers, have standing to sue in federal court. *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1289-90 (5th Cir. 1988). The Elite Centers obtained assignments of benefits from patients. The Elite Centers assert claims against Cigna as assignees of the patients who are plan participants or beneficiaries. Accordingly, the Elite Centers have standing to bring a civil action against Cigna under section 502(a) of ERISA.

43.     Through assignments of benefits, the Elite Centers became the owner of the participant's or beneficiary's claim for reimbursement. As a result, pursuant to section 502(a)(1)(B) of ERISA, the Elite Centers are entitled "to recover benefits due to [them] under the terms of his plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan to recover

benefits due under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). And, pursuant to section 502(a)(3) of ERISA, the Elite Centers are entitled to obtain equitable relief. 29 U.S.C. §1132(a)(3).

44.     Under ERISA and the terms of the plans, Cigna was obligated to timely reimburse plan participants and beneficiaries for costs associated with services performed by the Elite Centers. Cigna underpaid the Elite Centers on claims that Cigna paid prior to March 2014. Then, beginning in March 2014, Cigna refused to reimburse the Elite Centers, in whole or in part, for many claims in accordance with ERISA and its plans. Cigna denied or underpaid claims submitted by the Elite Centers based on its contention that the Elite Centers engaged in "fee forgiving." Cigna interpreted "exclusionary" language contained within its plans to deny or underpay the claims submitted by the Elite Centers on the basis of alleged "fee forgiving."

45.     ERISA does not permit the interpretation adopted by Cigna. Cigna's interpretation and reliance on the "exclusionary" language to deny or underpay claims submitted by the Elite Centers violates the terms of its plans and constitutes an abuse of Cigna's discretion.

46.     Cigna's nonpayment of claims, underpayment of claims, and delayed payment of claims constitutes a violation of section 502(a) of ERISA.

47.     Pursuant to section 502(a) of ERISA, the Elite Centers are entitled to recover benefits due under the terms of the plan, which were improperly denied by Cigna.

### ERISA - Failure to Provide Full and Fair Review

48.     The Elite Centers incorporate by reference the preceding paragraphs.

49.     Section 503 of ERISA provides that an employee benefit plan shall "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

50.     Cigna functions as a "plan administrator" under ERISA for plans. In its role as a plan administrator, Cigna is a fiduciary of the benefit plan.

51.     The Elite Centers, as assignee of a participant or beneficiary, submitted claims for reimbursement.

52.     Cigna refused to pay the claims submitted by the Elite Centers for reimbursement. However, as a fiduciary, Cigna failed to provide a "full and fair review" of all claims submitted for reimbursement by the Elite Centers, as an assignee of a beneficiary or participant.

53.     Pursuant to section 502(a)(1)(B) of ERISA, the Elite Centers are entitled to a "full and fair review" of all claims, which were denied by Cigna.

### ERISA - Failure to Provide Information

54.     The Elite Centers incorporate by reference the preceding paragraphs.

55.     Section 104(b)(4) of ERISA provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Pursuant to section 502(c) of ERISA, "[a]ny administrator . . . who fails or refuses to comply with a request for any information for which such administrator is required by [ERISA] to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary [for civil penalties up to $110 per day]."  29 U.S.C. § 1132(c)(1)(B).

56.     Section 502(c) applies to the "plan administrator." Under ERISA, the "plan administrator" includes either the person specifically designated by the plan or "if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A). If an administrator is not so designated by the plan and "a plan sponsor cannot be identified," the administrator is "such other person as the Secretary may by regulation prescribe." *See* 29 U.S.C. §1002(16)(A)(iii). Through its conduct, Cigna administered the plan, functioned as the "plan administrator," and, thereby, became the *de facto* "plan administrator."

57.     The Elite Centers, as assignee of a participant's or beneficiary's right to information, requested that Cigna provide information pursuant to section 104(b)(4) of ERISA.

58.     Cigna failed to comply with the Elite Centers' requests for information pursuant to section 104(b)(4) of ERISA.

59.     As a result, pursuant to section 502(c) of ERISA, the Elite Centers are entitled to the requested documents and to civil penalties up to $110 per day with respect to each claim.

### ERISA – Breach of Fiduciary Duties of Care and Loyalty

60.     The Elite Centers incorporate by reference the preceding paragraphs.

61.     Section 404(a)(1) of ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and— (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;. . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1).

62.     Cigna failed to discharge its duties with respect to the plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

63.     On information and belief, Cigna financially benefitted from its underpayment, non-payment, and delayed payment of claims submitted by the Elite Centers, as assignee of plan participants and beneficiaries.

64.     Cigna failed to discharge its duties with respect to the plans solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the plan.

65.     Cigna's benefit determinations, claims processing procedure, and appeals review process violated the terms of the plans and ERISA and, as a result, Cigna's fiduciary duty of care and loyalty.

66.     The Elite Centers are entitled to appropriate equitable relief to redress Cigna's violation of ERISA and the terms of the plan.

## Request for Declaratory Judgment

67.     The Elite Centers incorporate by reference the preceding paragraphs.

68.     Pursuant to 22 U.S.C. § 2201, a case of actual controversy exists between the Elite Centers and Cigna within this Court's jurisdiction.

69.     Pursuant to section 37.001 *et seq.* of the Texas Civil Practice & Remedies Code, a justiciable controversy concerning the rights, status, and legal relations exists between Cigna and the Elite Centers.

70.     The Elite Centers request a declaratory judgment that: (a) the Elite Centers properly submitted all claims for reimbursement to Cigna in compliance with state and federal laws; (b) before the Elite Centers scheduled any services for a patient who is a member of Cigna's plan, the Elite Centers contacted Cigna and confirmed the patient's eligibility, coverage and benefits for the services; (c) the Elite Centers relied on Cigna to provide accurate information about a patient's eligibility, coverage and benefits for the

services; (d) the Elite Centers disclosed their status as out-of-network providers to Cigna and patients before scheduling services for a patient; (e) the Elite Centers, as assignee of a participant or beneficiary, did not engage in fraud or misrepresentation by attempting to collect benefits from Cigna; (f) Cigna failed to pay benefits to the Elite Centers, as assignee of a participant or beneficiary, as required by the terms of Cigna's plans; (g) Cigna failed to provide a reasonable opportunity for a full and fair review of Cigna's decisions regarding the Elite Centers' claims; (h) Cigna abused its discretion by refusing to pay benefits to the Elite Centers, as assignee of a participant or beneficiary, as required by the terms of Cigna's plans; (i) Cigna failed to comply with the Elite Center's requests for information; and (j) the Elite Centers are entitle to recover benefits under the terms of the plans, which were improperly denied by Cigna.

### Attorneys' Fees

71.     The Elite Centers incorporate by reference the preceding paragraphs.

72.     Pursuant to section 502(g)(1) of ERISA, sections 37.009 and 38.001 *et seq.* of the Texas Civil Practice & Remedies Code, and Rule 54(d) of the Federal Rules of Civil Procedure, the Elite Centers are entitled to an award of attorneys' fees.

### Texas Civil Practice & Remedies Code § 16.069

73.     The Elite Centers assert their counterclaims against Cigna pursuant to section 16.069 of the Texas Civil Practice and Remedies Code.

Dated: August 17, 2016

By*: /s/Craig Florence*
        Craig Florence
        State Bar No. 07158010
        Southern District of Texas No. 14743
        Sadie Butler
        State Bar No. 24085234
        Southern District of Texas No. 2924139
        **GARDERE WYNNE SEWELL LLP**
        3000 Thanksgiving Tower
        1601 Elm Street
        Dallas, Texas 75201
        (214) 999-3000

**ATTORNEYS FOR DEFENDANTS ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC, HOUSTON METRO ORTHO AND SPINE SURGERY CENTER LLC, AND ELITE AMBULATORY SURGERY CENTERS LLC D/B/A ELITE SURGICAL AFFILIATES**

---

## CERTIFICATE OF SERVICE

On August 17, 2016, the undersigned electronically filed this document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/Craig Florence*_____
Craig Florence