**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:16-CV-00571 |
| ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC, *et al*, | § § § | |
| Defendants. | § | |

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court are Defendants' Motion to Dismiss (Doc. No. 10) and Plaintiffs' Motion for Stay Pending Appeal (Doc. No. 20). After considering the motions, the responses thereto, and all applicable law, the Court determines that the Motion for Stay should be denied and the Motion to Dismiss should be granted in part and denied in part.

**I.     BACKGROUND**

This case arises out of a dispute over the obligation of an insurer to pay surgical care centers for medical services provided to insured patients. Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") are managed care companies that administer healthcare benefit claims on behalf of self-funded and insured employee health and welfare benefit plans. Most of these plans are funded by employers, using employee contributions.

The facts in this section are drawn from Cigna's complaint (Doc. No. 1) and are undisputed for purposes of this motion. As a fiduciary, Cigna administers benefit plans that cover healthcare services from both in-network and out-of-network service providers. In-network

1

providers agree to fixed rates for their services, typically lower than an out-of-network provider might charge. In exchange for agreeing to fixed rates, in-network providers have access to Cigna plan members ("members") as a source of patients. Cigna incentivizes members to choose in-network providers by setting lower coinsurance, deductibles, and copayments for in-network services. Members may seek care from out-of-network providers but face increased cost-share obligations; their coinsurance is typically 20% to 50% of covered expenses. Under Cigna's plan, members receive less expensive services and incur less financial risk when they obtain care from in-network providers.

Defendant Elite Ambulatory Surgery Centers LLC d/b/a Elite Surgical Affiliates owns and manages Defendants Elite Center for Minimally Invasive Surgery ("Elite") and Houston Metro Ortho and Spine Surgery Center ("Houston Metro") (collectively, "Elite Centers"). Elite and Houston Metro are both out-of-network ambulatory surgical centers in the Houston area, opening in 2010 and 2012, respectively. They have not entered contracts with any insurance company, including Cigna, and they set their own their own fees for services. Cigna has issued approximately $8 million in combined payments to the Elite Centers, on behalf of employer-sponsored and Cigna-funded plans.

Cigna alleges the Elite Centers have designed a patient recruitment and payment system to obscure the disincentives patients face when obtaining care at out-of-network facilities. According to Cigna, the Elite Centers partner with in-network physicians who promote Elite and Houston Metro and refer their patients for care there, in exchange for financial returns to the physicians. The in-network physicians often do not disclose that the Elite Centers are out-of-network facilities that will trigger the increased cost-share requirements of the members' plans, or that the members' physicians receive any financial incentive for referrals.

In spite of the out-of-network cost-sharing requirements, many members do not pay their own monies for services at Elite or Houston Metro, a practice call "fee forgiving." As part of the alleged fee-forgiving scheme, all patients sign a Patient Statement Form—before receiving a bill—declaring they could face financial hardship if required to pay the full amount of their deductible or coinsurance. The Elite Centers then submit healthcare reimbursement claims[1] to Cigna for the full cost of services rendered (or more than the actual value of services, called "phantom charges"), without disclosing that they had waived members' cost-sharing obligations.

Cigna believes the Elite Centers' fee-forgiving practices are impermissible under the plans and render Defendants' insurance claims ineligible for reimbursement. The plans obligate Cigna to cover only expenses that a member incurs. The plans exclude "charges for which you [the member] are not obligated to pay for or for which you are not billed or for which you would not have been billed except that they were covered under this plan" and "charges which would not have been made if the person had no insurance." (Doc. No. 1, ¶¶ 46-47.) Under Cigna's interpretation, members who had their coinsurance or deductible waived did not incur expenses, and thus those costs are not covered.

On March 3 and 4, 2014, Cigna sent two letters to the Elite Centers notifying them of Cigna's recent findings of fee-forgiving and its belief that they had violated plan terms and conditions. Since then, Cigna has requested yet received almost no documentation from the Elite Centers that they in fact collected members' cost-share amounts. Cigna then notified the Elite Centers that it will no longer pay claims submitted unless they are accompanied by proof that that a member has incurred a loss by satisfying her out-of-network cost-share obligation.

---

[1] For clarity, claims for payment submitted to a medical insurer are referred to as "reimbursement claims," "benefits claims" or "insurance claims" while legal claims asserted in a lawsuit are referred to simply as "claims."

On March 3, 2016, Cigna filed a complaint against the Elite Centers alleging violations of the Employment Retirement Income Security Act of 1974 ("ERISA"), fraud, negligent misrepresentation, money had and received, promissory estoppel, unjust enrichment, tortious interference with contract, and civil conspiracy. The Elite Centers then filed a counter complaint, alleging breach of contract, unjust enrichment, promissory estoppel and violations of ERISA. The Elite Centers seek to dismiss all of Cigna's claims; Cigna has not moved for dismissal of the Elite Centers' claims.

Since Cigna filed its complaint, the United States District Court for the Southern District of Texas issued a ruling in a separate case to which Cigna is a party, *Connecticut General Life Insurance Co., et al. v. Humble Surgical Hosp., LLC*, C.A. No. 4:13-cv-3291, 2016 WL 3077405 (S.D. Tex. Jun. 1, 2016) (hereinafter "*Humble*"). Cigna has appealed the *Humble* decision to the Fifth Circuit, and now moves for a stay of proceedings in this case pending resolution of the *Humble* appeal. The parties in *Humble* have completed briefing, but the Court of Appeals has not yet scheduled a hearing. The Court will address both Cigna's Motion for Stay and the Elite Centers' Motion to Dismiss.

## II.  LEGAL STANDARDS

### A.  Motion to Stay

The Supreme Court has held:

> The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In weighing these competing interests, the court considers (1) the potential prejudice to the non-movant from a brief stay; (2) the hardship to the movant if the stay is denied; and (3) "the judicial efficiency in terms of the simplifying or

complicating of issues, proof, and questions of law which could be expected to result from a stay." *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 494–95 (S.D. Tex. 2015). The movant bears the burden of showing hardship. *Landis*, 299 U.S. at 255. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*

### B. Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 680 (citation

omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). The court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (internal citation omitted).

## III.    MOTION TO STAY

Cigna argues a stay is necessary because the determinations in *Humble* bear importantly on how the instant case is managed. (Doc. No. 20 at 1.) According to Cigna, this case and *Humble* present significant overlapping issues, including whether Cigna's plan interpretation is legally correct, whether Cigna can be subject to ERISA penalties, and whether Cigna may recover overpayments through an equitable lien by agreement or constructive trust. (Doc. No. 20 ¶ 8.) The Fifth Circuit's answers to these questions will simplify and resolve key issues for both parties' claims for relief.

The Elite Centers, despite relying heavily on the *Humble* decision in their motion to dismiss, believe a stay is unnecessary and prejudicial. (Doc. No. 21.) First, the Elite Centers present numerous arguments as to why Cigna's claims can and should be denied, irrespective of *Humble*. Second, they argue discovery on the Elite Centers' counterclaims must proceed regardless of the outcome of the *Humble* appeal because the counterclaims require fact-specific inquiries. Finally, the Elite Centers assert that they will be prejudiced by a delay in recovering the monies allegedly owed to them and an inability to correct the allegations against them.

As neither party has presented compelling evidence of prejudice or hardship, the Court focuses on the factor of judicial economy, in terms of simplifying issues and questions of law. Dismissing claims at this stage will narrow the potential issues in question and provide more clarity to the parties. Although the Court looks to *Humble* in its analysis of the Elite Centers' Motion to Dismiss, see *infra*, Judge Hoyt's decision is not dispositive. The Fifth Circuit may eventually provide necessary guidance on major legal questions in this case, but the Court can issue a decision on the Elite Centers' Motion to Dismiss based on the current law, without relying on *Humble*. Further, the Court is skeptical that the Fifth Circuit's ruling in *Humble* will significantly change the legal landscape. The Fifth Circuit previously stated in dicta that "there are strong arguments that Cigna's plan interpretation is not 'legally correct'." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 196 (5th Cir. 2015). Even so, the Court does not rest its decision today on the *Humble* decision or its predictions of how the Fifth Circuit will rule in the future.

The Court finds the factors, primarily judicial economy, weigh in favor of moving the case forward. When possible, the Court prefers to resolve pending legal questions, rather than postpone proceedings indefinitely while awaiting rulings in other cases. Even taking *Humble* into account, claims presented by both parties survive in the case, and the parties should conduct discovery on them. The parties may move for a stay at a later date if they believe it necessary, and the Court will consider such a request.

## IV. MOTION TO DISMISS

### A. ERISA

As an insurance claims administrator, Cigna is a fiduciary under ERISA. 29 U.S.C. § 1102(21)(A). A benefits plan fiduciary may bring a civil action under ERISA § 502(a)(3) "(A) to

enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Elite Centers argue that Cigna's ERISA claims must be dismissed because Cigna interpreted the plan incorrectly and abused its discretion in doing so, and because Cigna does not seek equitable relief. The Court considers each argument in turn.

### 1. Interpretation of the Plan

Cigna has sued under ERISA § 502(a)(3) to enforce and redress violations of the healthcare benefits plan terms. (Doc. No. 1 ¶ 143.) The plans delegate discretionary authority to Cigna to serve as the authorized claims fiduciary "to interpret and apply Plan terms," including "the determination of whether a person is entitled to benefits under the plan and the computation of any and all benefit payments." (Doc. No. 1, ¶ 25.) The plans also authorize Cigna to collect overpayments made on behalf of the plans by recovering funds or offsetting the overpayment amount from future benefits claim payments. (Doc. No. 1, ¶ 34.)

Where a benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the administrator's interpretation of the plan is reviewed under an abuse of discretion standard. *Anderson v. Cytec Indus.*, 619 F.3d 505, 512 (5th Cir. 2010). First, the court asks whether the interpretation is "legally correct." *Gosselink v. Am. Tel. & Tel.*, 272 F.3d 722, 726 (5th Cir. 2001). The most important factor at this stage is whether the contested interpretation is consistent with a fair reading of the plan. *Id.* at 727. Because ERISA requires that plan descriptions be written in a manner calculated to be understood by the average plan participant, the court must assess whether the administrator's interpretation is consistent with the plan language in its "ordinary

and popular sense." 29 U.S.C. § 1022(a); *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009). Additional factors in determining if an administrator's interpretation is legally correct include whether the administrator has given the plan a uniform construction and whether there are any unanticipated costs resulting from different interpretations of the plan. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008).

If the determination is not legally correct, the court proceeds to the second question: whether the interpretation was an abuse of discretion. *Gosselink*, 272 F.3d at 726. Factors at this stage include, but are not limited to: whether the plan administrator had a conflict of interest, the internal consistency of the plan, the factual background of the determination, and any inferences of lack of good faith. *N. Cypress*, 781 F.3d at 196.

If the determination is legally correct or within Cigna's discretion, the final inquiry is whether the decision to deny benefits was supported by substantial evidence. *Id.* Substantial evidence is "more than a scintilla, less than a preponderance, and [] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

The Elite Centers argue that *Humble*, which held that Cigna had interpreted the plan language incorrectly, forecloses relief for Cigna. (Doc. No. 10 at 9.) *Humble* arises out of the same plan language and interpretation at issue here. In each case, the service provider waived or reduced the patient contribution for particular medical services while still billing Cigna for Cigna's portion. Cigna then refused to pay all or part of its obligation to the service provider, based on Cigna's interpretation of the exclusionary language in its plans. Under Cigna's interpretation, if the member was not obligated to pay all or part of the patient contribution for a particular medical service, then that service was not covered. *Humble*, 2016 WL 3077405, at *6.

Therefore, according to Cigna, Cigna was not obligated to make a full payment to the service provider if the service provider waived or reduced the patient contribution. *Id*. In the *Humble* litigation, Cigna sued Humble to recover alleged overpayments for services rendered to members. *Id.* at *1. Humble asserted counterclaims against Cigna for, *inter alia*, nonpayment and underpayment of claims in violation of ERISA § 502(a)(1)(B). *Id.* at *2.

In the first stage of its ERISA analysis, the *Humble* court found that Cigna's interpretation of the exclusionary plan language was legally incorrect. *Id.* at *17-18. That is, the average plan participant would not interpret the plan language to mean that Cigna was relieved of its obligation to pay based on a waived or reduced patient contribution. *Id*. In the second stage of the ERISA analysis, the court found that Cigna abused its discretion by "obstinately denying Humble's claims for benefits in spite of the medical services provided." *Id*. at *17. The court highlighted the fact that Cigna "admittedly has never used the exclusionary language to reject covered services before and was relentless in engaging in an arbitrary manner with regard to Humble and its claims." *Id*. at *18.

*Humble*, though not outcome-determinative, is instructive. Collateral estoppel, or issue preclusion, applies to the issue of whether Cigna's plan interpretation was legally correct, but not as to whether Cigna abused its discretion. The former issue was litigated in *Humble*, and the determination of the issue was a necessary part of the judgment on Humble's ERISA § 502(a)(1)(B) counterclaims. *Humble*, 2016 WL 3077405, at *17-18. The exclusionary language in this case and in *Humble* is identical. In both cases, Cigna interpreted the language to mean that if a patient had no obligation to pay, Cigna was also excused from paying. The legal correctness analysis is based on whether the contested interpretation is consistent with how the average plan participant would interpret the language. *Stone*, 570 F.3d at 260. Therefore, the only relevant

facts are the language of the plan and Cigna's interpretation. Because the *Humble* decision has preclusive effect on the issue of legal correctness, this Court holds that Cigna's interpretation of the plan language was legally incorrect.

Collateral estoppel does not, however, apply to the issue of abuse of discretion. Compared to the analysis of legal correctness, abuse of discretion is more fact-specific, taking into account factors such as conflict of interest, internal consistency of the plan, the factual background of the determination, and any inferences of lack of good faith. *See N. Cypress*, 781 F.3d at 196. The holdings in *Humble* on abuse of discretion thus turn on facts specific to the relationship between the parties in that case. Because the issues in the cases are merely analogous, not identical, collateral estoppel does not apply to the abuse of discretion question. *See NLRB v. W.L. Rives Co.*, 328 F.2d 464, 468 n.5 (5th Cir. 1964). In order to determine whether Cigna abused its discretion in interpreting its plan language, the Court must evaluate whether Cigna had a conflict of interest, the internal consistency of the plan, the factual background of the determination, and any inferences of lack of good faith. *See N. Cypress*, 781 F.3d at 196. These are all questions of fact that cannot be decided at the motion to dismiss stage.

### 2. Equitable Relief

The Elite Centers argue that Cigna also cannot recover under ERISA § 502(a)(3) because its claims are not equitable in nature. (Doc. No. 10 at 9.) Cigna maintains it may recover the overpayments it made to the Elite Centers as equitable restitution. (Doc. No. 1 ¶¶ 151-52; Doc. No. 15 at 14.) As a fiduciary, Cigna may obtain only equitable, not legal, relief to redress ERISA violations or to enforce its plans. *See* 29 U.S.C. § 1132(a)(3).

Whether a restitution claim is legal or equitable depends on "the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Great-W. Life & Annuity Ins. Co. v.*

*Knudson*, 534 U.S. 204, 213 (2002) (quotation marks and citation omitted). When a party seeks "nothing other than compensatory *damages*—monetary relief for all losses their plan sustained"—it in fact seeks legal relief. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). Cigna, however, seeks to enforce two types of *equitable* liens: as a matter of restitution and by agreement. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 364 (2006).

Restitution in equity often takes "the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213. To prevail on an equitable restitution claim, "a plaintiff ordinarily could not enforce any type of equitable lien if the defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all." *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 659 (2016). *See also. Sereboff*, 547 U.S. at 364 (plaintiffs must be able to "follow" identifiable funds on which to put an equitable lien). Liens by agreement, in contrast, do not require tracing. *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex re.l. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 366 (5th Cir. 2014).

The Elite Centers allege that Cigna disguises its legal claims for monetary relief in the language of equity. (Doc. No. 10 at 15.) Cigna counters that for its equitable lien by restitution, it seeks overpayments deposited into a single account in Elite and Houston Metro's names, and Cigna "has no reason to believe that Defendants have dissipated the overpayments on nontraceable items." (Doc. No. 1 ¶ 151; Doc. No. 15 at 13-14.) The Court finds these facts pled in Cigna's complaint sufficient to make a claim for restitution. The Elite Centers' reference to *Humble,* in which Cigna failed to submit evidence showing funds distinct from Humble's general assets, is unpersuasive. (Doc. No. 10 at 11.) The *Humble* court made its findings after trial. In the

present case, Cigna has not yet had an opportunity to prove the deposited funds can be traced to a specific account. Although the Court certainly hopes Cigna will pursue only claims that it can substantiate, it will reserve judgment on the accuracy of the facts Cigna has pled.

Cigna also asserts that the plans authorize it to collect overpayments, creating a lien by agreement. Cigna cites language from the plan: "When an overpayment has been made by CIGNA, CIGNA will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment." (Doc. No. 1 ¶ 34.) The Elite Centers argue this language alone is insufficient to create a constructive trust or equitable lien; there is no agreement between the parties that Cigna is entitled to a specifically identifiable fund. (Doc. No. 10 at 13.) "ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets." *Bunte*, 756 F.3d at 365. Cigna reiterates that it should have the opportunity to establish that the plan provisions created an equitable lien on specific assets. (Doc. No. 15 at 16.)

The Court warily agrees with Cigna. District courts across the country have construed similar plan language and reached different results. *See, e.g., Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F. Supp. 3d 501, 511–12 (D. Conn. 2015) (finding equitable lien by assignment because Cigna seeks "to impose an equitable lien on particular property rather than impose personal liability on the surgical centers"); *Connecticut Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC*, No. 14 CV 08777, 2015 WL 6560536, at *5 (N.D. Ill. Oct. 29, 2015) (holding plan language creates equitable lien through right to overpayment); *Connecticut Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. CIV.A. DKC 14-2376, 2015 WL 4394408, at *9 (D. Md. July 15, 2015) (finding no equitable lien by agreement). Amidst the

inconsistencies in the case law, the Court believes Cigna should have the opportunity to prove that its plan provisions create an equitable lien by agreement or assignment.

Finally, Cigna seeks several types of injunctive and declaratory relief. First, Cigna seeks a declaration that: the Elite Centers violated Texas statutory laws; the Elite Centers did not disclose pertinent information; Cigna is entitled to recoup all overpayments made to the Elite Centers; and Cigna was correct in refusing to pay the Elite Centers in full or in part for some services billed. (Doc. No. 1 ¶¶ 139; 155.) Second, Cigna asks for a constructive trust over overpayments currently held by the Elite Centers, an order enjoining the Elite Centers from transferring funds that would bring their bank accounts below the amount of Cigna's alleged overpayments, and an order that the Elite Centers must provide an accounting of funds no longer within their control. (Doc. No. 1 ¶¶ 155.) Third, Cigna requests that the Elite Centers be enjoined from: submitting insurance claims that exceed usual market rates; making promises to induce Cigna members to use their facilities; and paying remuneration to physicians for referrals of patients. (Doc. No. 1 ¶¶ 135.) These examples include most but not all of Cigna's requested injunctive and declaratory relief.

The Elite Centers declare these requests are not appropriate equitable relief under ERISA. (Doc. No. 10 at 14.) The Court finds *Bunte* instructive. In *Bunte*, plaintiffs asked the court for a declaration that the defendant was liable to pay expenses, an injunction requiring the defendants to pay the plaintiff, an order requiring defendants to make restitution, and "an order of equitable relief, in the form of money compensation." 756 F.3d at 360–61. The Fifth Circuit found that these claims, although framed as equitable relief, were all in fact requests for monetary damages. *Id.* This Court also must consider which requests are actually for monetary damages, "the classic form of *legal* relief." *Knudson*, 534 U.S. at 210. That said, the fact that "relief takes the form of a

money payment does not remove it from the category of traditionally equitable relief." *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011). Unlike in *Bunte*, Cigna makes a number of requests that are not disguised means to collect money from the Elite Centers. Only two of Cigna's requests for relief—declarations that Cigna is entitled to overpayments and that it was correct in withholding some payments—strike the Court as couched appeals for monetary damages, and thus must be dismissed. The other requests fit within the traditional categories of equitable relief and may be pursued under ERISA.

### 3.  Whether Cigna's ERISA Claims are Time-Barred

The Elite Centers also assert that Cigna's ERISA claims are barred by the statute of limitations. They present two theories: (1) the statute of limitations should be two years, looking to the analogous claim for unjust enrichment; and (2) Cigna waived its right to recoup payments made within the two-year limitations period, after it sent letters to the Elite Centers on March 3 and 4, 2014. (Doc. No. 10 at 16.) Cigna responds that a four-year statute of limitations is applicable, and that it did not knowingly make payments after March 2014 such that it can no longer recoup expenses already paid. (Doc. No. 15 at 16-17.) The Court concludes that the proper statute of limitations in this case is two years, as unjust enrichment is the most analogous state cause of action. Cigna may pursue its claims that fall within the two-year period.

### a.  Statute of Limitations

Because ERISA does not provide a statute of limitations for § 502(a)(3) claims, this Court must apply the state statute of limitations of the most analogous cause of action. *N. Cypress*, 781 F.3d at 204 (citing *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992)).  The Elite Centers contend that Cigna's ERISA claims are analogous to a cause of action for unjust enrichment, which has a two-year statute of limitations. They cite *North Cypress*, in which the

court found the insurer's counterclaims more closely resembled unjust enrichment claims for relief. 781 F.3d 182, 205 (5th Cir. 2015). Conversely, Cigna insists its claim is rooted in fraud, which has a four-year statute of limitations under Texas law.

"Unjust enrichment claims are based on quasi-contract." *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000). Unjust enrichment "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex.App.-El Paso 2009, no pet.) (citing *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex.App.-Dallas 2006, no pet.)). Thus, "[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559, 560, 562 (1948); *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex.App.-Austin 1987, writ denied)).

Generally speaking, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment." *City of the Colony v. North Tex. Mun. Water Dist.*, 272 S.W.3d 699, 731 (Tex.App.-Fort Worth 2008, pet. dism'd) (citing *Conoco*, 52 S.W.3d at 684). "This is because parties should be bound by their express agreements, and when a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express terms of the agreement." *Id.* (citing *Conoco*, 52 S.W.3d at 684). In some circumstances, however, "overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment." *Southwestern Elec. Power Co. v. Burlington Northern Railroad Co.*, 966 S.W.2d 467, 469-70 (Tex. 1998) (citing *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687-88 (1951)

(allowing restitution for excess money held by defendant after selling plaintiffs' cotton harvester pursuant to oral contract); *Bowers v. Missouri, Kan. & Tex. Ry. Co.*, 241 S.W. 509, 510-11 (Tex.Civ.App.-Texarkana 1922, no writ) (allowing restitution for freight charges paid in excess of rates specified in shipping contract); *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31-33 (5th Cir. 1963) (holding that plaintiff could recover money mistakenly paid in excess of the contract price); *Natural Gas Pipeline Co. v. Harrington*, 246 F.2d 915, 921 (5th Cir. 1957) (holding that gas company was entitled to restitution of difference between contract rate and price paid under invalid rate order set by regulatory board)).

Conversely, the elements of fraud are: "'(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.'" *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)). "'Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.'" *Id.* (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex.App.-Dallas 2009, no pet.)).

The Elite Centers' counterclaim is most analogous to a cause of action for unjust enrichment. The Court compares Cigna's claims here with its counterclaims in *North Cypress.* In that case, Cigna alleged that the North Cypress Medical Center ("North Cypress") gave patients a prompt pay discount and thus did not charge them the full amount of their deductible or coinsurance, despite receiving treatment at an out-of-network facility. North Cypress sent Cigna

a notice stating its intention to offer this discount to Cigna members. When North Cypress submitted reimbursement claims forms to Cigna, it did disclose the actual amounts it had charged Cigna members. (Cigna Amended Counterclaim at ¶¶ 28-32, N. Cypress v. Cigna, No. 4:9-cv-2556 (S.D. Tex. Apr. 20, 2012), ECF 292.) In this case, the Elite Centers' conduct in submitting reimbursement claims and failing to disclose all discounts mirrors North Cypress' practices. The difference is the form of the alleged fee-forgiving scheme. In *North Cypress*, the hospital discounted patients' costs in exchange for prompt payment and told Cigna of its intention to discount the out-of-network rate. In the instant case, the Elite Centers provided patients with a financial hardship form and thereby reduced patients' share of the costs. In both cases, the health care provider did not inform Cigna how much patients/members actually paid.

Although Cigna alleges facts that are suggestive of fraud, the essence of the ERISA claim is unjust enrichment, as recovery is not predicated upon intentional, false representations by the Elite Centers. As in *North Cypress*, the core of Cigna's claim is that the Elite Centers listed charges on insurance claim forms without requiring patients to pay the full amount of those listed charges. In turn, Cigna made overpayments of the "difference between the benefits that the plans paid and the benefits to which the plan members were contractually entitled." (Doc. No. 1 ¶ 150.) Admittedly, the line between fraud and unjust enrichment is less clear than in *North Cypress*. The Fifth Circuit held that "given that North Cypress expressly informed Cigna of its discounts prior to any representations about charges, fraud seems particularly inapt." *N. Cypress*, 781 F.3d at 205. Cigna does not allege that the Elite Centers notified Cigna of the Patient Statements, but rather that Cigna learned of them by conducting its own investigation. Nonetheless, whether the Elite Centers notified Cigna of the Patient Statement or accurately represented patients' financial hardship does not affect if the patients "incurred" a cost and if the insurance claim qualifies as a

"covered expense." Cigna's ERISA claims hinge on whether it received reimbursement claims in contravention of the plan terms, not on whether the Elite Centers' conduct was fraudulent. Thus, the ERISA claims are more like unjust enrichment and a two-year statute of limitations applies.

### a. Voluntary Payment Rule

Given the two-year statute of limitations, Cigna may seek to recover overpayments made after March 3, 2014, two years before Cigna filed its complaint. But the Elite Centers argue the voluntary payment rule prevents Cigna from recovering any payments made after March 3, 2014. On that date, Cigna sent a letter to the Elite Centers notifying them of Cigna's findings regarding the fee-forgiving practices. According to the Elite Centers, "any payment made after March 4, 2014 was made voluntarily with full knowledge of the practices Cigna now alleges constitute fraud." If Cigna believed the Elite Centers' charges were unjustified, it should not have made payments. (Doc. No. 10 at 16-17.)

Under Texas law, "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (quoting *Pennell v. United Ins. Co.,* 150 Tex. 541, 243 S.W.2d 572, 576 (1951)). "[A] party who pays a claim is deemed to have made his own decision that it is justly due." *Id.*

Cigna stresses that the voluntary payment rule only applies if a person pays with full knowledge of all the facts. "Whether or not a consumer had full knowledge of all the facts in any given case will depend upon the specific circumstances presented." *BMG Direct,* 178 S.W.3d at 776. Cigna seeks the opportunity to prove that it did not have full knowledge and paid only because the Elite Centers engaged in "further fraud and deception to hide the facts from Cigna."

(Doc. No. 15 at 17-18.) The complaint does not specify further fraud by the Elite Centers in the time period after the letter was sent. However, district courts shall not dismiss a complaint under Rule 12(b)(6) because the complaint fails to explicitly allege facts disproving an affirmative defense. *Cf. Jones v. Bock*, 549 U.S. 199, 216, 127 (2007) (finding that the Prison Litigation Reform Act does not require plaintiffs to plead facts to overcome affirmative defense of exhaustion); *Hall v. Hodgkins*, 305 F. App'x 224, 228 n.1 (5th Cir. 2008). Voluntary payment is an affirmative defense. *See BMG Direct*, 178 S.W.3d at 778; *Sw. Indus. Imp. & Exp., Inc. v. Borneo Sumatra Trading Co.*, 666 S.W.2d 625, 627 (Tex. App. 1984), writ refused NRE (July 11, 1984). Therefore the Court will allow Cigna the opportunity to present evidence that its claims for recovery are not barred by the voluntary payment rule.

The goal of the voluntary payment rule is to prevent one party from "leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back." *BMG Direct*, 178 S.W.3d at 768-69. In *Miga v. Jensen*, the Texas Supreme Court held that the voluntary payment rule is inapplicable when a party makes a payment but made clear its intent to pursue an appeal and seek restitution. 299 S.W.3d 98, 103–04 (Tex. 2009). Although Cigna does not state if the letter referenced a plan to challenge the payments in court, the letter did reportedly notify the Elite Centers of Cigna's objections to the current billing practices. Cigna's conduct did not necessarily indicate that it believed the payments were justly due. Cigna's knowledge and intentions are questions of fact better left for a later stage of litigation. *See United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 264 (5th Cir. 2014) (finding consideration of defense inappropriate at motion to dismiss stage, when inferences must be drawn in favor of plaintiff).

The Court finds that a two-year statute of limitations is appropriate, and Cigna may

pursue claims accrued within that two-year period. The Court therefore denies the Elite Center's motion to dismiss with respect to Cigna's claims under ERISA § 502(a)(3).

### B. State Law Claims for Relief

Cigna also brings several state law claims for relief: fraud, negligent misrepresentation, money had and received, promissory estoppel, unjust enrichment, tortious interference with contract, injunctive relief, declaratory judgment and civil conspiracy. (Doc. No. 1 ¶¶ 92-158.) The Elite Centers argue that all claims must be dismissed because they are preempted by ERISA and, alternatively, because Cigna has not pled adequate supporting facts. The Court will consider preemption generally and then as it applies to each type of claim for relief.

ERISA § 514 broadly preempts, with certain exceptions, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Courts have interpreted this section to mean that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health v. Davila,* 542 U.S. 200, 209 (2004). This is so, in part, because "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–65 (1987). The Fifth Circuit instructs courts to look for two prongs in the preemption test: "(1) The state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants

and beneficiaries." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004). If both are satisfied, then ERISA preempts the state law claim.

The Elite Centers argue Cigna's state law claims are preempted because they affect an area of exclusive federal concern and directly affect the relationship among traditional ERISA entities. According to the Elite Centers, whether Cigna was obligated to pay for the insurance claims they submitted hinges on the construction of the terms in Cigna's plans. (Doc. No. 10 at 4-5.) Cigna responds that preemption is inappropriate because the state law "has only a tenuous, remote, or peripheral connection with covered plans." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) (citation omitted). According to Cigna, the duties not to commit fraud and other acts are independent of the terms of an ERISA plan. (Doc. No. 15 at 6-7.) The Court will discuss the arguments in detail in the next section.

Cigna also maintains that the Elite Centers are not ERISA entities; therefore there is no relation among ERISA entities and no basis for preemption. (Doc. No. 15 at 8-10.) The Court disagrees with Cigna. A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). "A healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 333–34 (5th Cir. 2005) (citing *Tango Transport v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir.2003)). Cigna attempts to distinguish between the assignment of an ERISA plan, which can confer on a provider derivative standing to sue, and being an ERISA beneficiary. (Doc. No. 15 at 10.) Although a health care provider may not be a beneficiary in all contexts, the Court finds that the Elite Centers are ERISA parties for the purposes of being defendants in §

502(a)(3) claims. Just as the Elite Centers would have standing to sue as a result of the assignment, they may be sued by Cigna to enforce the terms of an ERISA plan.

The Court notes that, although most plans in this case are governed by ERISA, a number of plans—sponsored by governmental or religious organizations—are not. (Doc. No. 1 ¶ 32.) The ERISA preemption analysis applies only to the plans governed by ERISA. For plans not covered by ERISA, the Court will consider only whether Cigna has pled sufficient facts for each state law claim to overcome a motion to dismiss.

### 1. Fraud and Negligent Misrepresentation

The Elite Centers seek to dismiss Cigna's fraud and negligent misrepresentation claims because they are preempted, Cigna does not allege a misrepresentation, and Cigna does not plead with particularity. Cigna challenges each of these grounds for dismissal.

Fraud and negligent misrepresentation have similar but distinct criteria. Each requires a material misrepresentation. As recited above, the elements of fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners*, 341 S.W.3d at 337. Negligent misrepresentation requires that: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *First Nat. Bank of Durant v. Trans*

*Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998). The Court may refer to the fraud and negligent misrepresentation claims collectively as "fraud."

The Court first addresses the issue of ERISA preemption for fraud claims. "Preempted state law includes any state cause of action that relates to an employee benefit plan, even if the action arises under general state law that in and of itself has no impact on employee benefit plans." *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 756 (5th Cir. 1990). Statutory and common-law duties allegedly violated may implicate the plan, but "not derive from the plan or depend wholly on the plan terms." *St. Luke's Episcopal Hosp. v. Acordia Nat.*, No. H-05-1438, 2006 WL 3093132, at *14 (S.D. Tex. June 8, 2006). ERISA preempts Cigna's claims for fraud if the determination of whether there was a material misrepresentation hinges on the plan terms.

On the one hand, the fraud claims directly relate to the interpretation of the plan terms. Cigna alleges that the Elite Centers made material misrepresentations by submitting "false and misleading bills for reimbursement of charges that were substantially in excess of the usual, customary, and reasonable charges for the same or similar medical services in the relevant market, and contained amounts that the improperly split with its referring physicians" and "facility charges that were in excess of the amounts that the patients actually agreed to pay." (Doc. No. 1 ¶ 110.) The bills were allegedly false or misleading because the Elite Centers submitted charges to Cigna without actually billing the patient or obligating the patient to pay her portion of the charge. (Doc. No. 1 ¶ 48.) The Elite Centers' failure to bill or collect from the patient is only a material misrepresentation if the plan prohibits such conduct. The Court cannot make a determination of whether these forms of fee forgiving are wrong without looking to the plan. Therefore, it would appear that ERISA preempts the fraud claims.

On the other hand, Cigna argues that the state law claims involve duties independent of

the plan. According to Cigna, the Elite Centers have duties "not to fraudulently misrepresent that they can grant 'hardship' waivers, not to illegally waive patient payment obligations in exchange for accepting an assignment of the patients' right to plan benefits, and not to pay kickbacks to physicians in exchange for patient referrals." (Doc. No. 15 at 8.) The duties arise from Texas statutes, not only from the plan terms. For example, a "health care provider may not waive a deductible or copayment by the acceptance of an assignment." Tex. Ins. Code § 1204.055; *see also* Tex. Occ. Code §§ 102.001. Texas law also prohibits the knowing preparation of a writing in support of a false insurance claim. *See* Tex. Occ. Code §§ 105.002. Cigna has pled facts alleging violations of each of these statutory provisions and others. Cigna may look to the state "statutory standards for defining right and wrong." (Doc. No. 15 at 22.) *See also Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998) ("we have on at least one occasion looked to enactments by the Legislature to determine if a civil tort duty should be imposed"). Cigna does not seek to enforce these statutes, but rather to use them as grounds to show that the Elite Centers engaged in fraudulent conduct.

The alleged violations of the Texas Insurance and Occupation Codes are independent legal duties. Even if the Elite Centers are ultimately entitled to reimbursement under the plan (because the fee-forgiving scheme does not render the charges uncovered), the Elite Centers could have violated the provisions in those Codes by receiving kickbacks or having patients sign sham hardship waivers. This conduct creates the basis for fraud claims, regardless of the plan interpretation. Although Cigna's ultimate obligation to pay may rest on the plan language, determining whether or not the Elite Centers engaged in fraudulent activity does not hinge on the meaning of Cigna's plans. *Cf. St. Luke's*, 2006 WL 3093132 at *14 (finding that insurer can be

liable for misrepresentation even if it correctly denied coverage). Therefore, the fraud claims are not preempted by ERISA.

Regardless of preemption, the Elite Centers argue the fraud claims should be dismissed because Cigna did not plead a valid misrepresentation and did not plead with particularity, as required by Rule 9 of the Federal Rules of Civil Procedure. (Doc. No. 10 at 19-20.) The Court finds that Cigna has pled sufficient facts and these claims may survive.

The Elite Centers seek to limit the representations potentially giving rise to fraud to six actions identified by Judge Hoyt in *Koenig v. Aetna Life Ins. Co.,* Doc. No. 549, 4:13-cv-359 (S.D. Tex. May 25, 2015.) (Doc. No. 10 at 19.) The representations include manipulation of patient diagnosis codes, miscoded procedures actually performed, performance of unnecessary procedures, submission of related bills, negligent performance of procedures, and inducement of payment for which no services were performed. (*Id.*) The Court sees no reason to limit the possible representations to those listed in *Koenig*. Judge Hoyt made this determination at trial in a different case with a different alleged fraudulent scheme. At this stage, the Court will consider a more expansive definition of representation, based on the breadth of Texas law.

The Elite Centers also contend that Cigna did not plead its claims in satisfaction of the Federal Rules of Civil Procedure. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). "[D]irectly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002). According to the Elite Centers,

Cigna failed to specify who allegedly made fraudulent statements and when they were made. (Doc. No. 10 at 20.) However, Cigna has described the conduct that allegedly constituted the alleged fraudulent schemes.

The Seventh Circuit has held that "[b]y requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469–70 (7th Cir. 1999). Cigna's complaint satisfies the purpose of the Rule 9 pleading requirements: it puts the party on notice about the scope of discovery and presents a supported claim. *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998) (finding specificity when plaintiff laid out "basic framework, procedures, the nature of fraudulent scheme, and the financial arrangements and inducements among the parties and physicians"). Cigna's complaint crosses the Rule 9(b) threshold. The Court thus denies the Elite Center's motion to dismiss Cigna's claims for fraud and negligent misrepresentation.

### 2. Unjust Enrichment, Promissory Estoppel, and Money Had and Received

Cigna contends the Elite Centers are liable on the principles of unjust enrichment, promissory estoppel, and money had and received. The Elite Centers request dismissal of all of these quasi-contract claims because they are barred by the existence of an express contract and are unsupported by equity grounds. (Doc. No. 10 at 21.) The Court finds that these claims are preempted by ERISA and barred by the plans, which are express contracts.

The preemption question is clearer for these claims than for fraud and negligent misrepresentation. Each of these claims depends on the interpretation of the plan. The money had

and received claim depends on patients' cost-share obligations and the bases for calculating patients' expenses. The promissory estoppel claim hinges on the Elite Centers' alleged failure to submit claims that "reflect charges that are usual, customary, and reasonable" and that the member is obligated to pay. The unjust enrichment claim stems from the proposition that "Cigna's plans are not required to cover amounts that members are not billed, are not obligated to pay, or for which they would not have been billed if they did not have insurance." (Doc. No. 1 ¶¶ 106, 113, 118.) Each of these claims is directly related to the interpretation of the plan itself and is preempted by ERISA.

Even for plans not governed by ERISA, the claims for unjust enrichment, promissory estoppel and money had and received must be dismissed. These are all quasi-contract claims. *See Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W.3d 833, 837 (Tex. App. 2008). "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Conoco, Inc.*, 52 S.W.3d at 684. *See also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 374–75 (5th Cir. 2008) ("there can be no "reasonable reliance on informal documents in the face of unambiguous Plan terms"). Cigna argues that the quasi-contract claims should not be barred because the claims arise from conduct prior to when the Elite Centers convinced Cigna members to enter patient assignments. (Doc. No. 15 at 21.) The Court disagrees. The claims all hinge on whether or not the Elite Centers' charges to Cigna are covered under the terms of the plan. The Court need not and should not consider the quasi-contract claims because it can instead look to an express contract. The Court dismisses Cigna's claims for unjust enrichment, promissory estoppel, and money had and received.

### 3. Tortious Interference with a Contract

"The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). It is "logically necessary rule that a party cannot tortiously interfere with its own contract." *Id* at 796. Assignment of a contract passes the contractual relationship to the assignee. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 78 (Tex. 2000). The Elite Centers became parties to Cigna's plans after receiving assignments of benefits claims from Cigna members.

While Cigna acknowledges that a party to a contract cannot allege a claim for tortious interference, it insists that the Elite Centers were not parties to the Cigna plans when the alleged interference occurred. First, the Elite Centers remuneration in exchange for patient referrals rendered the assignments void. Second, the interference took place when the Elite Centers induced patients to agree to their services in exchange for a waiver of co-pay. This occurred prior to any assignments and prior to when the Elite Centers would have been parties to the contracts. (Doc. No. 15 at 21.)

The Court finds that ERISA preempts the tortious interference claim for any ERISA-governed plans. The possible ways that the Elite Centers interfered with the contract are: failing to inform patients of the status of Elite and Houston Metro as out-of-network facilities; misleading patients about their coinsurance obligations; encouraging patients to sign a financial hardship waiver; and waiving patients' cost-share obligations. (Doc. No. 1 ¶ 129.) Some of these acts, such waiving patients' costs, occurred after assignment and are thus ineligible for a tortious interference claim. As to the other alleged interfering acts, the Court cannot know that the Elite

Centers' statements were in fact misleading without interpreting the language of the plan. If the statements were not misleading, then the Elite Centers' actions did not constitute interference. Because the Court must look to the plans themselves, ERISA preemption is appropriate.

The plans not governed by ERISA fall into a different category. If the Elite Centers induced patients to receive care at their facilities by misinforming them about the cost of care, that inducement would have occurred before the assignment of benefits and before the existence of a contractual relationship. Although the court will still need to turn to plan language to understand what statements were in fact misleading, those plans are not governed or preempted by ERISA. Thus, the tortious interference claims may proceed for ERISA-exempt plans.

### 4. Injunctive Relief & Declaratory Judgment

Cigna seeks declaratory judgment and injunctive relief. The Court discussed both forms of relief extensively in Section IV(A)(2) and need not repeat itself here. The Court permits these claims to move forward to the extent that they in fact seek equitable relief and are not a guise for monetary damages.

However, the Court has yet to assess one of Cigna's requested forms of relief: a declaration that the Elite Centers have "violated Texas statutory laws concerning the billing of medical treatment and services provided to Cigna members." (Doc. No. 1 ¶ 139.) The statutory provisions Cigna seeks to enforce—the Texas Insurance Code §§ 1204.055 and 552.03 and the Texas Occupation Code §§ 101.203, 102.001, 102.006 and 105.002—do not provide private rights of action. Declaratory judgment "is not available where the substantive statute at issue does not provide a private right of action." *Gaalla v. Citizens Med. Ctr.*, No. CIV.A. V-10-14, 2010 WL 2671705, at *4 (S.D. Tex. June 30, 2010) (citing *Schilling v. Rogers*, 363 U.S. 666, 677, 80 (1960)). As Cigna has no right to enforce the Texas Insurance or Occupation Codes, it

may not seek a declaratory judgment related to violations of those Codes. Thus, the Court dismisses Cigna's request for declaratory judgment that the Elite Centers violated Texas statutory laws.

### 5. Civil Conspiracy

At the end of its complaint, Cigna alleges civil conspiracy. Neither party mentions this claim in the motion to dismiss or response thereto. The Court will not dismiss this claim *sua sponte.*

## V. CONCLUSION

Cigna's Motion to Stay (Doc. No. 20) is **DENIED** without prejudice to refiling at a later date.

For the aforementioned reasons, Cigna may proceed on its claims under ERISA (including for injunctive and declaratory relief, unless otherwise noted). Cigna's claims for fraud, negligent misrepresentation and civil conspiracy also survive. The Court dismisses Cigna's claims for unjust enrichment, money had and received, and promissory estoppel. Cigna's claims for tortious interference with contract are dismissed for plans governed by ERISA but not for ERISA-exempt plans. The Elite Center's motion to dismiss (Doc. No. 10) is thereby **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 15th day of February, 2017.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE